Nina F. BOWMAN, Claimant–Appellant,

v.

ZENITH RADIO CORPORATION, Employer–Respondent.

No. 19417.

Missouri Court of Appeals, Southern District, Division Two.

March 16, 1995.

Paul F. Reichert, Springfield, for claimant-appellant.

Raymond E. Whiteaker, John E. Price, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for employer-respondent.

GARRISON, Presiding Judge.

In this workers' compensation case, Nina F. Bowman (Claimant) appeals from the decision of the Labor and Industrial Relations Commission (Commission) affirming an award entered by the Administrative Law Judge (ALJ). The ALJ's award included benefits for Claimant for temporary total disability, 25% permanent partial disability of the body as a whole, and past and future medical expenses.

The claim in question arose from an incident which occurred at the Zenith plant in Springfield, Missouri on January 29, 1990 when a rope being pulled behind a forklift caught Claimant's ankles, causing her to fall and sustain what the evidence indicated were injuries with permanent consequences. She did not return to work until May 24, 1990 but was sent home after 30 minutes to one hour because of her inability to do the work assigned to her. She next returned to work on June 28, 1990 and continued to work, except for a two week period when the plant was closed for vacations, until September 18, 1990.[1] She did not work from that time until the hearing before the ALJ on May 19, 1992.

On this appeal, Claimant alleges that the Commission erred in (1) determining the applicable average weekly wage for purposes of

---

1. There was a dispute in the evidence about whether her release from work resulted from excuses from her physicians or a "reduction in force" caused by decreasing work at the plant.

computing the compensation rate; and (2) in finding that she sustained a permanent partial instead of a permanent total disability.

■ In her first assignment of error, Claimant contends that the Commission erred by not including, for the purpose of calculating her average weekly wage, contributions to and earnings on a profit sharing account furnished for her by Zenith for the year prior to her injury. The profit sharing plan, which was not the product of a collective bargaining agreement, had been funded by annual contributions by Zenith to each employee's account equalling a minimum of six percent of the employee's annual salary. Interest earned on the employee's account was also added annually. The plan was described in the evidence as a "part of the employee benefits system" of Zenith and as a "retirement fund." There was no evidence, however, concerning the exact origin or nature of the plan, whether it was memorialized in a formal document, or what part it played in the employment arrangement with Claimant.

Claimant argues that calculation of her average weekly wage should have included Zenith's contribution to her profit sharing account during the year prior to the injury ($1999.51), as well as the interest earned on the account balance during that period ($2797.73) and "relinquishments"[2] ($45.60). She argues that the inclusion of these amounts would have resulted in an average weekly wage of $445.54,[3] thereby entitling her to the maximum compensation rates for both temporary total disability and permanent total disability.[4] In contrast, the compensation awarded was apparently based on an average weekly wage of $350.66, resulting in the maximum benefits of $173.85 per week for permanent partial disability, but $233.77, instead of the maximum of $289.75, for temporary total disability.

Zenith relies on § 287.250, RSMo Supp. 1993, which includes a provision, adopted in 1992, specifically excluding fringe benefits from the calculation of earnings as a basis for compensation. The statute, as amended, provides: "[w]ages ... does not include fringe benefits such as retirement, pension, health and welfare, life insurance, training, social security or other employee or dependent benefit plan furnished by the employer for the benefit of the employee."

At the time of the injury to Claimant, however, § 287.250, RSMo 1986, was applicable. See Reinerd v. A.B. Chance Co., 800 S.W.2d 777, 778 (Mo.App.W.D.1990). That version of the statute did not contain the provision excluding fringe benefits from the calculations. It provided, in pertinent part:

> The basis for computing the compensation provided for in this chapter shall be as follows:
>
> (1) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages, or earnings....
>
> ....
>
> (7) In computing the annual earnings there shall be included the reasonable value of board, rent, housing, lodging and fuel received from the employer as part of the remuneration of the employee and which can be estimated in money....

Claimant cites Betz v. Telegraph Investment, Inc., 844 S.W.2d 556 (Mo.App.E.D. 1992), in support of her contention that the employer contributions to and earnings from the profit sharing plan should be included in the calculations. In Betz, the Eastern District of this court held that the value of two meals per day, five days per week, were earnings received by a workers' compensation claimant and should be considered in calculating an award. That case is clearly distinguishable from the instant case, however. The applicable statute in Betz was the same version of § 287.250 which applies in the instant case. Subsection (7) of that stat-

---

**2.** The meaning or source of "relinquishments" was not explained in the record.

**3.** In her "Claim For Compensation," Claimant listed her average weekly wages as $300.80 gross.

**4.** Claimant's argument presumes that she was entitled to a permanent total disability rating. We hold, in connection with her second point, that the Commission did not err in making an award for permanent partial as opposed to permanent total disability.

ute specifically provided that the reasonable value of board received from the employer as part of the employee's remuneration was to be included in computing earnings for compensation purposes. Unlike the employer furnished benefits referred to in *Betz*, there was no statutory provision providing that the benefits in question in the instant case were to be included in "wages."

In *Wengler v. Druggists Mutual Insurance Co.*, 616 S.W.2d 859 (Mo.App.E.D.1981), the issue was whether calculations of an employee's average weekly earnings should include premiums for medical insurance furnished by the employer. At that time § 287.250 contained the same provisions as the version applicable in the instant case. The Eastern District of this court quoted § 287.250(1) and (7) and said:

> The above-quoted statute defines with particularity that which may *automatically* be considered part of an employee's "compensation," and payment of insurance premiums is not mentioned. Statutory omission of insurance premium payments in effect creates a presumption that such payments may not be considered in computing the employee's weekly wage.

*Id.* at 860. The court indicated, however, that the presumption could be "refuted by evidence of the contractual terms of employment agreed upon between the employer and employee." *Id.* at 860–861. The court concluded by saying:

> It is incumbent upon claimant, who seeks to include the insurance premium payments in the compensation equation, to present evidence that such was the contractual arrangement. It is in this evidentiary context that claimant must be considered as having failed. [Citation omitted.]
>
> In light of the statutory omission of insurance payments in § 287.250, RSMo Supp.1976, and inasmuch as the record is devoid of evidence indicating that the payment of premiums was part of a contractual arrangement to which decedent employee had a contractual right, we must affirm the trial court's judgment.

*Id.* at 861.

The employer furnished benefits in issue in the instant case were not included among those which § 287.250(7) specifically provided should be included in calculating earnings for the purpose of determining workers' compensation benefits. Likewise, there was no evidence of a contractual arrangement between the parties whereby Zenith had an obligation to make the payments for Claimant's benefit. Under these circumstances, we must conclude that the Commission did not err as contended by Claimant.

This result is in line with the majority of other jurisdictions. *See* 2 A. Larson, *The Law of Workmen's Compensation,* § 60.12(b) (1994). *See also Cable Vision of Central Florida v. Armes,* 629 So.2d 274 (Fla. 1st DCA 1993); *Barnett v. Sara Lee Corp.,* 97 Md.App. 140, 627 A.2d 86 (1993); *Antillon v. N.M. State Highway Dept.,* 113 N.M. 2, 820 P.2d 436 (1991); *Schlotfeld v. Mel's Heating and Air,* 233 Neb. 488, 445 N.W.2d 918 (1989); *Rainey v. Mills,* 733 S.W.2d 756 (Ky. App.1987); *Nelson v. Saif,* 302 Or. 463, 731 P.2d 429 (1987). It is also bolstered by the holding in *Morrison–Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs,* 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983), in which the United States Supreme Court held that "wages" did not include payments made by an employer to union trust funds for the purpose of insurance and retirement benefits. The court noted that workers' compensation acts are the result of a complex legislative balancing of the interests of employers and employees and that "reinterpretation of the term 'wages' would significantly alter the balance achieved by Congress." 461 U.S. at 636, 103 S.Ct. at 2052. It also referred to the fact that there was no evidence that Congress had seriously considered providing that fringe benefits should be included in determining compensation under the Act in question there. 461 U.S. at 632–33, 103 S.Ct. at 2050.

The first point is denied.

■ In her second point, Claimant contends that the Commission erred because there was a lack of sufficient, competent evidence to support an award of a 25% permanent partial disability to the body as a whole, whereas the evidence warranted a

finding of permanent total disability. She acknowledges, however, the difficulty associated with this contention because of the applicable standard of review by which we are bound.

■■■ Our review of the Commission's decision is limited to a determination of whether the findings are authorized by law and supported by competent and substantial evidence on the whole record. Mo. Const. Art. 5, § 18 (1945, amended 1976); § 287.495, RSMo 1986; *Julian v. Consumers Markets, Inc.*, 882 S.W.2d 274, 275 (Mo.App.S.D.1994). We may overturn a decision by the Commission only if it is unsupported by substantial evidence or is clearly contrary to the overwhelming weight of the evidence. *Johnson v. City of Duenweg Fire Dept.*, 735 S.W.2d 364, 366 (Mo. banc 1987). The evidence is examined in the light most favorable to the Commission's decision, accepting all reasonable inferences therefrom and disregarding all unfavorable evidence. *Julian v. Consumers Markets, Inc.*, 882 S.W.2d at 275. Considering the evidence in that manner, the inquiry on questions of fact is limited to whether the Commission could have reasonably reached the result it did. *Lawson v. Emerson Elec. Co.*, 833 S.W.2d 467, 471 (Mo. App.S.D.1992). We defer to the Commission on issues involving credibility of witnesses and the weight to be given their testimony. *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527 (Mo. banc 1993). We cannot substitute our judgment on issues of fact for that of the Commission even if we would have made a different initial conclusion. *Lawson v. Emerson Elec. Co.*, 833 S.W.2d at 471.

Claimant argues that an award of permanent total disability was authorized by the evidence and particularly by reason of the testimony of the Claimant; Dr. Presley, who initially saw and treated her; Dr. Janie Vale, to whom she was referred by her attorney; and two vocational rehabilitation experts. She characterizes their testimony as supporting a finding of permanent total disability based on their opinions that Claimant was not a candidate for full time employment because of the consequences of her injuries. The Commission also noted that evidence and acknowledged that it would support the finding urged by the Claimant.

Instead of finding a permanent total disability, the Commission made an award based on a permanent partial disability of 25% of the body as a whole. In doing so, it referred to the testimony of Dr. Paul Olive, an orthopedic surgeon to whom Claimant was referred by Dr. Vale. Dr. Olive's testimony could be construed as indicating an improving condition so that by the time he released Claimant she had basically returned to the condition she was in at the time of the injury. He testified that he released her from treatment without instructions and that, in his opinion, she had sustained a permanent partial disability of 5% of the body as a whole.

■ Claimant essentially argues that the Commission incorrectly interpreted the testimony of Dr. Vale as being dependent on her belief that Claimant's symptoms had been consistent and continuous; it interpreted Dr. Olive's testimony too broadly in indicating that it demonstrated lack of persistent complaints which were consistent; and it made a finding which was against the weight of the evidence. The acceptance or rejection of medical evidence, however, is for the Commission. *Julian v. Consumers Markets, Inc.*, 882 S.W.2d at 275. It was not required, therefore, to believe and make a finding based on the evidence which Claimant argues would support an award for permanent total disability. Rather, the Commission was entitled to believe evidence which could support a different finding. Our review of the record indicates that the Commission's decision to make an award based on a permanent partial disability as opposed to a permanent total disability was supported by competent evidence.

■ Claimant also contends in this point that the finding of a 25% permanent partial disability to the body as a whole was not supported by sufficient, competent evidence. As indicated above, there was sufficient evidence to support a finding of permanent partial disability. It is true that none of the medical experts gave an opinion containing a permanent partial disability rating of 25%. The Commission can consider all of the evi-

dence in arriving at a percentage and is not bound by the percentage estimates of medical experts. *Sellers v. Trans World Airlines, Inc.,* 776 S.W.2d 502, 505 (Mo.App.W.D. 1989). It is free to find a disability rating higher or lower than that expressed in medical testimony because the degree of disability is not solely a medical question. *Id. See also Malcom v. La–Z–Boy Midwest Chair Co.,* 618 S.W.2d 725, 728 (Mo.App.S.D.1981).

In the instant case, our review of the record indicates that the Commission's findings concerning the type and degree of disability were supported by competent, substantial evidence. Claimant's second point is, therefore, denied.

One additional item should be addressed. Employer points out in its brief that an error was made in calculating the average weekly wage in that the uncontradicted evidence was that Claimant earned $18,325.22 in 1989 as opposed to $18,234.48 utilized by the ALJ. This would result in the average weekly wage being $352.41 rather than $350.66 with a resulting entitlement to temporary total disability benefits of $234.94 rather than $233.77. We have authority to modify an award of the Commission if we determine that it is not supported by sufficient competent evidence. § 287.495.1. We choose to do so in the instant case.

The award is amended by substituting $234.94 for the weekly benefits for temporary total disability awarded to Claimant rather than $233.77. The award is otherwise affirmed.

PREWITT and PARRISH, JJ., concur.