Gregory M. LYTLE, Respondent,

v.

T–MAC, INC., Appellant.

No. WD 52099.

Missouri Court of Appeals,
Western District.

Oct. 22, 1996.

Beverly Figg, Jefferson City, for appellant.

Phillip Baker, Columbia, for respondent.

HANNA, Presiding Judge.

Employer, T–Mac, Inc., appeals from an order of the Labor and Industrial Relations Commission awarding worker's compensation benefits to the claimant, Gregory M. Lytle.

All of the points on appeal are lodged under the heading of the employee's failure to prove his claim by sufficient competent evidence.

The claimant drove a garbage truck for the employer. In June 1991, he began experiencing back pain. The claimant initially attributed the pain to excessive physical activity. However, when it persisted, the claimant informed Blake Tekotte, part owner of T–Mac, that he was experiencing back pain and that he thought that the seat of his truck could be the problem because it was not level.

Following a family camping trip over Labor Day weekend, the claimant sought medical treatment for his back. After going to the emergency room, the claimant called his supervisor to advise him of the situation. The supervisor did not object to the claimant's receiving treatment there. The claimant then was referred to Dr. Janie Vale, an orthopaedist, who requested an MRI, which showed that the claimant had experienced degenerative changes of a low disc, with left disc herniation. The employer did not object to the treatment by Dr. Vale.

In mid-October, the claimant was allowed to return to work on a restricted basis. He resumed his regular job, but used a pillow to help make the seat level. However, in December, he returned to Dr. Vale because of persistent pain. Dr. Vale told the claimant to stop working, and she prescribed medication. In February 1992, he was again permitted to return to work on a restricted basis. In May 1992, Dr. Vale found that the claimant had reached maximum medical improvement and had responded well to treatment and physical therapy.

The claimant filed a claim for compensation on February 5, 1992. Dr. Vale rated the claimant's permanent partial disability at twenty percent. In July 1992, Dr. Gaines, an orthopaedic surgeon, examined the claimant at the employer's request. Dr. Gaines rated the claimant's disability at five percent.

A hearing was held to determine the claimant's eligibility for worker's compensation. The Administrative Law Judge heard the testimony of several witnesses and denied

the claim for benefits, finding that the claimant had failed to meet his burden of proving that his injury or occupational disease was sustained within the cause and scope of employment. The ALJ found that the claimant's activities during the weekend camping trip to be the cause of his injury. On review, the Commission reversed the ALJ's finding and awarded the claimant temporary total disability, permanent partial disability, and past medical care.

■ This court has determined the standard for reviewing decisions of the Commission when the Commission has reversed the ALJ. *Davis v. Research Medical Center,* 903 S.W.2d 557, 565 (Mo.App.1995). It is a two-step test, and both steps must be met before the Commission's decision will be reversed. *Id.* at 565. First, it examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the award is supported by competent and substantial evidence. If there is such evidence, it moves on to the second step of the analysis to determine whether the award is against the overwhelming weight of the evidence. *Id.*

■ In determining whether there is competent and substantial evidence in the record, we must view the evidence and legitimate inferences therefrom in the light most favorable to the Commission's award. *Id.* In the first step of the test, we disregard evidence contrary to the decision and leave matters of credibility to the Commission. *McClendon v. Mid City Discount Drugs,* 870 S.W.2d 456, 456 (Mo.App.1994). We will not substitute our judgment on issues of fact for that of the Commission, even if we would have made a different initial conclusion. *Lawson v. Emerson Elec. Co.,* 833 S.W.2d 467, 471 (Mo.App.1992). However, questions of law are reserved for the independent judgment of the reviewing court. *Cabool v. Missouri State Bd.,* 689 S.W.2d 51, 54 (Mo. banc 1985).

■ If there is competent and substantial evidence supporting the award, the reviewing court must apply step two of the analysis and determine whether the award

was clearly against the overwhelming weight of the evidence contained in the record before the Commission. *Davis,* 903 S.W.2d at 565. The court must consider all evidence in the record, including evidence which is unfavorable to the award. *Id.* In determining whether the award is appropriate, the appellate court will take into consideration the credibility determinations made by the Commission. If those determinations as to witnesses who gave live testimony before the ALJ differ from those made by the ALJ, we also will consider the ALJ's credibility findings. We also will examine the reasons the Commission differed from these findings if they are contained in the record. *Id.* at 571.

■ In its first point, the employer contends that the Commission erred in reversing the ALJ's order because the claimant failed to prove by competent and substantial evidence that he injured his back while in the course and scope of his employment. The employer maintains that the evidence shows that the claimant injured his back on a camping trip over Labor Day weekend as a result of lifting heavy objects, participating in camping activities, and sleeping on the ground on an air mattress.

■ The claimant has the burden of proving that his injury arose out of and in the course of his employment. *Johnson v. Evans & Dixon,* 861 S.W.2d 633, 635 (Mo.App.1993). He must prove a direct, causal connection between the injury and some distinctive feature of the job, which is common to all jobs of that sort, by competent and substantial evidence. *Sellers v. Trans World Airlines,* 752 S.W.2d 413, 415–416 (Mo.App. 1988). In reviewing the evidence, we resolve all doubts in favor of the employee. *State ex rel. Doe Run Co. v. Brown,* 918 S.W.2d 303, 307 (Mo.App.1996).

The record reflects that the claimant drove a garbage truck for his employer for six to nine hours a day depending on the route. The left side of the driver's seat was lower than the right side by as much as six inches, and the truck vibrated during normal use. In June 1991, the claimant began having back pain that would generally increase throughout the week and decrease over the

weekend. The claimant told one of the owners of the company that he was experiencing some back pain and that he thought the driver's seat was the problem. The employer restuffed the seat in early July 1991, but the seat deteriorated to an uneven state within a couple of weeks.

During a Labor Day camping trip, the claimant awoke on Sunday with lower back pain which extended into his left calf. He went to the emergency room and was referred to Dr. Vale. In mid-October, Dr. Vale released the claimant to return to work on a restricted basis. He resumed his regular job but used a pillow to help make the seat level. On December 27, while driving his route, he doubled up with pain and had to be relieved by another driver. On January 2, 1992, Dr. Vale completely disallowed the claimant's working.

The employer contends the claimant was not a credible witness. Therefore, because the doctors relied upon his description of the uneven truck seat, the truck's vibration, and all other events leading up to his injury when they formed their medical opinions, they were not supported by an adequate foundation. The employer contends that the doctors had no way of determining whether the claimant's story was accurate when they made their diagnoses.

Both Dr. Vale and Dr. Gaines stated that the garbage truck was the causative factor of the claimant's injury. They further agreed that heavy equipment operators have an increased risk of lower back pain, depending on the length of exposure and vibration levels. Dr. Vale testified that "unless [the claimant] had read a textbook, he gave an incredible history of the sequencing of a lumbar disc syndrome.... [M]ost patients, unless they are truly living that, cannot give you that kind of a history."

The record has sufficient competent evidence supporting the Commission's determination that the claimant's injury occurred within the course and scope of his employment, thereby warranting an award of worker's compensation. The decision reached by the Commission also was not against the weight of the evidence in the record as a whole, therefore, the award was appropriate.

In its second point, the employer argues that the Commission erred in relying on Dr. Vale's and Dr. Gaines' opinions because they were given in response to an allegedly defective hypothetical question. The employer claims that the hypothetical question was defective because it did not contain all of the necessary facts and because it contained facts not in evidence.

■■■ An expert may base an opinion on hypothesized dates or facts, but when such opinion (other than one stated on cross-examination) is based upon hypothesized information, the dates and facts must be either in the record or admissible as evidence. *White v. American Republic Ins. Co.,* 799 S.W.2d 183, 193 (Mo.App.1990). "When an expert is asked to assume certain facts are true in order to answer a hypothetical question, those facts must be established by the evidence." *Repple v. Barnes Hosp.,* 778 S.W.2d 819, 822 (Mo.App.1989). A hypothetical question must include facts sufficient to present the questioner's theory of the case, but does not need to include all material facts supported by the evidence. *Jines v. Young,* 732 S.W.2d 938, 947 (Mo.App.1987). Further, "[t]he sufficiency of a hypothetical question is addressed to the sound discretion of the trial court." *Repple,* 778 S.W.2d at 822.

■■■ The employer objected to the hypothetical question on the grounds that it contained facts that were not in evidence and facts which were not going to be put in evidence. First, the employer argues that there was no evidence that the seat stuffing had been removed or discarded. Although the question was not well phrased, there was evidence that the seat was not level. The misstatement by counsel about how the seat became unlevel did not prevent the expert from rendering an opinion based on the hypothetical question because how it became unlevel was not relevant to the expert's opinion.

■■■ The employer also objected to the hypothetical question because it did not contain all the necessary facts, including that the claimant slept on an air mattress on the ground, lifted a heavy cooler and other camp-

ing equipment on the camping trip, went bowling one or two times shortly before the camping trip, was an active sportsman, and operated a forklift for approximately two years immediately prior to working for the employer. The employer argues that the omission of these facts forced the experts to opine without benefit of all of the facts.

However, the claimant was not required to present facts consistent with the employer's theory of the case. *Jines,* 732 S.W.2d at 947. The claimant may construct the hypothetical so that it contains only the material facts which support his theory. *Id.*

■ The employer also argues that the question was deficient because it stated that the claimant drove a heavy trash truck, when different kinds of vehicles would have caused different vibrational exposure. The claimant did, in fact, drive a garbage truck. It was not error to describe the truck as a heavy trash truck.

The ALJ did not abuse his discretion in overruling the employer's objection and allowing the experts to answer the claimant's hypothetical question as it was phrased.

■ In its third point, the employer argues that the Commission erred in relying on medical literature to establish a recognizable link between the claimant's injury and his employment.

■ In an occupational disease case, the claimant must show that there was an exposure to the disease which was greater than or different from that which affects the public generally, and that there was a recognizable link between the disease and some distinctive feature of the job which is common to all jobs of that sort. *Jackson v. Risby Pallet and Lumber Co.,* 736 S.W.2d 575, 578 (Mo.App.1987). "Any evidence received without objection which has probative value shall be considered by the agency along with the other evidence in the case." § 536.070.8, RSMo 1994. Moreover, the Commission is free to accept or reject medical evidence. *Bowman v. Zenith Radio Corp.,* 895 S.W.2d 276, 280 (Mo.App.1995).

The employer maintains that there was no evidence, other than the medical literature, which established a recognizable link between the claimant's disc syndrome and his nine months of truck driving. The medical literature offered into evidence contained studies where individuals who operated heavy equipment for at least five years were evaluated.

Both Dr. Vale and Dr. Gaines stated that the garbage truck was the causative factor of the claimant's injury. They further agreed that heavy equipment operators have an increased risk of lower back problems, depending on the length of their exposure and the vibration levels to which they are exposed. Dr. Vale testified that nine months of truck driving was a significant exposure. Dr. Gaines testified that it took a matter of months to a year for the claimant's disc to degenerate.

It was within the Commission's discretion to accept some or all of the medical literature which was admitted into evidence. Further, the Commission did not rely solely upon the medical literature because it stated that "the physicians and articles also provide the requisite link between the disease and a distinctive feature of the claimant's job which is common to all jobs of that sort—being seated for long periods in a moving vehicle."

As discussed above, the evidence, including the testimony of the physicians, provided substantial competent evidence that there was a link between the claimant's injury and his employment.

■ In its fourth and final point, the employer argues that the Commission erred in accepting Dr. Vale's permanent partial disability rating of twenty percent. The employer maintains that the Commission should have adopted Dr. Gaines' rating of five percent or, in the alternative, averaged the two ratings because when Dr. Gaines saw the claimant five months after Dr. Vale had evaluated him, the claimant showed marked improvement. Specifically, the employer claims that a twenty percent permanent partial disability was not supported by substantial and competent evidence because, as of the date of the hearing, the claimant had improved.

■ The Commission can consider all of the evidence in arriving at a percentage rat-

ing for the claimant's permanent partial disability. *Bowman*, 895 S.W.2d at 280–281. It is not bound by the percentage estimates of medical experts because the "degree of disability is not solely a medical question." *Id.* at 281.

When medical opinions conflict, the Commission decides which to accept. *Hawkins v. Emerson Electric Co.*, 676 S.W.2d 872, 877 (Mo.App.1984). The Commission may disbelieve the testimony of a witness even when no contradictory or impeaching evidence is presented. *Beasley v. Dake Inc.*, 795 S.W.2d 646, 647 (Mo.App. 1990). "The determination of a specific amount or percentage of disability is a finding of fact within the special province of the Commission." *Banner Iron Works v. Mordis*, 663 S.W.2d 770, 773 (Mo.App.1983).

Dr. Gaines agreed with Dr. Vale that claimant suffered from a permanent disability, but believed it to be a five percent disability. Dr. Gaines' opinion was based on one visit with the claimant, which was made in anticipation of litigation, at the request of the employer/insurer.

However, the Commission found the rating of Dr. Vale, the claimant's treating physician, to be a more credible and accurate determination of the nature and extent of claimant's disability. Adopting Dr. Vale's diagnosis, the Commission found the claimant to be twenty percent permanently and partially disabled. There was substantial and competent evidence to support the Commission's finding that the claimant suffered from a twenty percent permanent partial disability.

The judgment and award of the Commission is affirmed.

SMART and LAURA DENVIR SMITH, JJ., concur.