Carol A. **HAWTHORNE**, Claimant–Respondent,

v.

**LESTER E. COX MEDICAL CENTERS**, Employer–Appellant.

No. 26291.

Missouri Court of Appeals,
Southern District,
Division Two.

June 30, 2005.

---

1.  All statutory references are to RSMo. (2000)    unless otherwise indicated.

David F. Sullivan, Springfield, MO, for Appellant.

William W. Francis, Jr., Springfield, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Lester E. Cox Medical Centers ("Cox") appeals from a final award of workers' compensation benefits to Carol Hawthorne ("Hawthorne"). The Labor and Industrial Relations Commission ("Commission") found Hawthorne had a permanent partial disability of 12.5% of the body as a whole based on an injury to her back and awarded her $18,736.88. On appeal, Cox claims the Commission erred by: (1) determining that Cox waived any objection based upon § 490.065 to the testimony of Hawthorne's expert, Dr. Andrew Myers ("Dr. Myers"),

by failing to raise this objection during Dr. Myers' depositions or at the division hearing; (2) refusing to strike Dr. Myers' deposition testimony or remand the case for further evidentiary proceedings because his testimony failed to meet the standards for admissibility required by § 490.065; (3) concluding that Hawthorne sustained a compensable disability because she failed to offer credible medical testimony that her work was a substantial factor in causing any such disability; and (4) concluding that Hawthorne sustained a permanent partial disability of 12.5% to the body as a whole because this finding was not supported by competent and substantial evidence on the whole record.[1] Because all of these arguments lack merit, we affirm.[2]

## I. Statement of Facts and Procedural History

Hawthorne herniated a disk in her back in 1990. Her treatment included a rhizotomy, injections into the nerves around the disk, physical therapy and work hardening therapy. After finishing her treatment in 1990, she gradually resumed her normal activities over time. Hawthorne attended school from 1991 to 1994 and began working again in 1995. She did not receive any further regular treatment by any doctor for her back injury.

In May 1998, Hawthorne began working for Cox as an admissions clerk. Her job was to assist in admitting outpatients who came to Cox for treatment. In the latter part of September 1998, Hawthorne began doing telephone pre-registrations for patients who needed future medical procedures performed at Cox. Hawthorne was moved downstairs into a small cubicle measuring about 3.5 feet square. She sat at a desk in front of a computer monitor with a telephone and a filing cabinet located to her left. The telephone list from which she made calls was located to the right of the computer monitor and keyboard. The work space was very cramped. Many old files and papers were stacked underneath the desk where Hawthorne sat. Because of the positioning of the file cabinet and the old files under the desk, Hawthorne could only turn about 45 degrees to the left or right unless she rolled her chair backwards out from under the desk. As Hawthorne made telephone calls from the chair with her legs under the desk, she was required to reach around, bend, stretch and twist back and forth as she read names from the list and wrote down pertinent information she obtained during the calls. She made between 25 and 60 calls during her eight-hour work day.

In the latter part of September or early October 1998, Hawthorne noticed that her back seemed like it was pinching a lot in the area of her hips, her low back was getting tight, and she was having pain in both legs that radiated down to her ankle. She first noticed these symptoms after she had been moved downstairs into her cubicle. These symptoms gradually got worse as the work week progressed and then improved during the weekends when she was off work.

Hawthorne went to see her family physician, Dr. Chase, about her symptoms. She received treatment from Dr. Chase and several other physicians for her back condition. Pursuant to Dr. Chase's orders, Hawthorne was off work because of her back problems from October 20, 1998 through February 23, 1999. On the latter date, Hawthorne was fired by Cox.

**1.** All references to statutes are to RSMo (2000).

**2.** Hawthorne's Motion for Costs for Frivolous Appeal, which was ordered taken with the case, is denied.

In February 1999, Hawthorne saw Dr. Myers. He performed a physical examination of Hawthorne and examined many of her prior medical records. He was deposed by the parties in March 2001. At no point during Dr. Myers' deposition did Cox assert § 490.065 as the basis for an objection to any question concerning the doctor's opinions or conclusions.

The divisional hearing was held before an administrative law judge ("ALJ") on April 8, 2002. Hawthorne and her husband testified on her behalf. The deposition of Dr. Myers, which was marked as Exhibit V, was one of the many exhibits offered into evidence by Hawthorne's counsel. Exhibit V was admitted only after Cox stated that it had "no objection" to the exhibit. In Dr. Myers' deposition, he testified that Hawthorne had a herniated lumbar disk at the L5–L6 level. He opined that Hawthorne's injury was primarily a new one, although there may have been some aggravation of her pre-existing facet arthrosis. Dr. Myers also testified that Hawthorne's injury was job-related because "sitting in a cubicle where she had the lower part of her torso in one position and the upper part of her torso twisted in an opposite position for a prolonged period of time gives you a perfect scenario for a typical disk herniation." The type of work being performed by Hawthorne was a substantial factor in her herniation because the twisting she did at work exposed her to risk factors that would cause this sort of injury. Dr. Myers rated Hawthorne as having a permanent partial disability of 15% of the body as a whole.

At the division hearing, Cox adduced testimony from its examining physician, Dr. Norbert Belz. He had examined Hawthorne, reviewed many of her prior medical records and conducted a study of her workplace environment. Based on a review of Hawthorne's magnetic resonance imaging films, Dr. Belz concluded that Hawthorne had a herniated disk at the L5 level. She suffered one herniation slightly to the left side of this disk in 1990 and another herniation slightly to the right side of this disk in 1998. During the time that Hawthorne worked at Cox, Dr. Belz acknowledged that "she did become more symptomatic." In Dr. Belz's opinion, however, Hawthorne's 1998 disk herniation was not caused by her occupational exposures at work. Based on Hawthorne's pre-existing history of intermittent left side radiculopathy, Dr. Belz rated Hawthorne as having a permanent partial disability of 10% of the body as a whole. Hawthorne did not reach maximum medical improvement until May 1999, at which point her disease had progressed to the point that Dr. Belz rated Hawthorne as having a 15% permanent partial disability of the body as a whole.

During Dr. Belz's testimony, Cox announced that it intended to take a rebuttal deposition of Dr. Myers and offered a packet of authoritative articles it intended to use during the deposition. In response to this request, the ALJ stated, "I'll just have to deal with it when I take up the deposition. I intend to admit the deposition by agreement, subject, however, to any appropriate objections made on a timely basis during the deposition. And they will be taken up as I review the evidence, as with all depositions that are admitted into evidence." At the conclusion of the divisional hearing, the ALJ declared the record closed and ordered that Dr. Myers' rebuttal deposition be filed by May 7, 2002.

Dr. Myers' rebuttal deposition was taken on April 24, 2002. At no point during this rebuttal deposition did Cox object to any of Dr. Myers' opinions or conclusions on the ground that they failed to comply with the requirements of § 490.065. The record was closed when Dr. Myers' second

deposition was filed on May 1, 2002. In this deposition, Dr. Myers reiterated his conclusion that Hawthorne suffered a herniated disk at the level of L5–L6 as a result of the accident and injury that occurred in October 1998. This 1998 herniation was a new condition, even though Hawthorne had previously experienced problems at the level above this. Dr. Myers testified to a reasonable degree of medical certainty that Hawthorne's rotation and twisting on the job caused or contributed to cause this herniation. Dr. Myers' "bottom line opinion was that this activity herniated this disk."

On February 14, 2003, the ALJ entered an award in the amount of $18,736.88 in Hawthorne's favor. The ALJ found that Hawthorne sustained a compensable injury beginning October 1, 1998 and that the injury to her back and body as a whole resulted in a 12.5% permanent partial disability.

In March 2003, Cox filed an application for review with the Commission. It affirmed and adopted the findings and conclusions of the ALJ on all but three issues: (1) whether Cox failed to timely object to Dr. Myers' testimony based on § 490.065; (2) whether Hawthorne's disability resulted from an accident or occupational disease; and (3) whether Cox could avoid liability based on the "three-month rule" found in § 287.067.7. These three issues were addressed in the Commission's supplemental opinion and final award allowing compensation.

The first issue had not been presented to the ALJ and was not included in Cox's application for review. The challenge to Dr. Myers' testimony was apparently first raised in a brief Cox filed with the Commission.[3] In the supplemental opinion, the

Commission summarized Cox's argument in this fashion:

> [Cox] argues on appeal before this Commission that the Supreme Court enunciated a new principle of law [in *State Board of Healing Arts v. McDonagh,* 123 S.W.3d 146 (Mo. banc 2004)] that governs the admissibility of Claimant's expert witness' testimony. It argues that the testimony of Dr. Myers should be stricken because his testimony does not qualify as expert testimony pursuant to section 490.065 RSMo.

The Commission rejected the argument on the ground that Cox waived any such objection to the admissibility of Dr. Myers' testimony based on § 490.065:

> After considering the arguments presented, we find [Cox] waived any objection to Dr. Myers' testimony under section 490.065 RSMo by failing to object to his testimony at the deposition. [Cox's] argument that it could not have objected to Dr. Myers' testimony at the deposition because *McDonagh* had not been decided is disingenuous. First, the Court points out in its decision that this issue was decided in 1997 in *Lasky v. Union Electric Co.,* 936 S.W.2d 797 (Mo. banc 1997). In *Lasky,* the Court emphasized twice that section 490.065 RSMo governs expert testimony. Section 490.065 RSMo was enacted in 1989; thus, it is not a new statute. Second, the Supreme Court issued its decision in *McDonagh* on December 23, 2003. [Cox] filed its brief with the Commission on June 27, 2003. In its brief, [Cox] extensively argued that the testimony of Dr. Myers should be stricken as violative of section 490.065 RSMo, without the benefit of the Court's ruling. If

---

3. We say "apparently" because Cox's brief asserting this "objection" was not included in the record on appeal. Therefore, our only information concerning the specific grounds of Cox's so-called objection and the relief it sought below comes from the Commission's supplemental opinion.

[Cox] was aware that it could argue section 490.065 RSMo was applicable in its brief without benefit of the Court's opinion, it should have been equally aware to raise this objection during Dr. Myers' depositions. .... Because [Cox] did not object during Dr. Myers' depositions or at the hearing, it has waived its objection to Dr. Myers' testimony on the basis of section 490.065 RSMo.

The second and third issues addressed by the Commission in its supplemental opinion were raised in Cox's application for review. With respect to the second issue, the Commission decided Hawthorne's injury was compensable whether it resulted from an accident or an occupational disease because Hawthorne's work duties were a substantial factor in causing the condition. With respect to the third issue, the Commission modified the ALJ's opinion. Like the ALJ, the Commission ruled that Cox could not avoid liability based on § 287.067.7; however, the Commission reached that conclusion because Cox presented no evidence concerning whether Hawthorne's prior employment exposed her to repetitive motion or whether such exposure was a substantial contributing factor to her injury.

Cox has appealed from the Commission's final award and presents for our determination the four issues summarized at the beginning of this opinion.

## II. Standard of Review

■ "In this appeal from a final award by the Commission, we review the findings and award of the Commission rather than those of the ALJ." *Birdsong v. Waste Management*, 147 S.W.3d 132, 137 (Mo. App.2004); *McDermott v. City of Northwoods Police Dept.*, 103 S.W.3d 134, 137 (Mo.App.2002). Subject to the three exceptions discussed above, the Commission affirmed and adopted the findings and conclusions of the ALJ. Therefore, we review the ALJ's findings and conclusions, as adopted by the Commission, on all other issues. *See Sutton v. Vee Jay Cement Contracting Co.*, 37 S.W.3d 803, 807 (Mo. App.2000).

· ■ An appellate court "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award." § 287.495.1. "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). On appeal, "no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding." § 287.495.1. Therefore, "we defer to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony." *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 234 (Mo.App.2003); *Chatmon v. St. Charles County Ambulance Dist.*, 55 S.W.3d 451, 455–56 (Mo.App.2001).

■ Commission decisions that are interpretations or applications of law, on the other hand, are reviewed for correctness without deference to the Commission's judgment. *Orr v. City of Springfield*, 118 S.W.3d 215, 217 (Mo.App.2003); *Maxon v. Leggett & Platt*, 9 S.W.3d 725, 729 (Mo.App.2000). We independently review questions of law. *Johnson v. Denton Construction Co.*, 911 S.W.2d 286, 287 (Mo. banc 1995).

## III. Discussion and Decision

■ In Cox's first point, it argues the Commission erred in concluding that Cox waived any objections to Dr. Myers' testimony based upon § 490.065 by failing to assert such objections during Dr. Myers' two depositions or at the division hearing. Cox claims the Supreme Court's decision in *State Board of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146 (Mo. banc 2003), "effected a change in the rules of evidence" so as to require the application of § 490.065 to all administrative proceedings that were pending on December 23, 2003 when *McDonagh* was handed down. Based on this premise, Cox then argues that its "objections" to Dr. Myers' testimony were timely because they were made before the Commission issued its final award. Cox's argument fails because the underlying premise is unsound.

As we interpret *McDonagh*, it did not effect any change in the law concerning either the proper standard or the basic principles that must be applied to determine the admissibility of expert testimony in administrative proceedings. To the contrary, the Supreme Court decided these issues by simply pointing out and reaffirming its own existing precedents.

The first issue addressed in *McDonagh* was the Board's contention that the admission of expert testimony in Missouri is governed by the standard set forth in *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923). The Supreme Court rejected this argument because it had previously held in *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 802 (Mo. banc 1997), "that the standard for the admission of expert testimony in civil cases is that set forth in section 490.065." *McDonagh*, 123 S.W.3d at 149. Thus, the Court did not announce any new principle of law when it held that § 490.065 governs the admission of expert testimony in civil cases.

The second issue addressed in *McDonagh* was the Board's contention that § 490.065 did not apply because a contested administrative proceeding is not a civil action within the meaning of that statute. The Supreme Court rejected this argument because it had previously held in *State ex rel. De Weese v. Morris*, 359 Mo. 194, 221 S.W.2d 206, 209 (1949), that the fundamental rules of evidence do apply in administrative hearings. The Court's holding in *De Weese* was reaffirmed in *Missouri Church of Scientology v. State Tax Commission*, 560 S.W.2d 837, 839 (Mo. banc 1977). Based on this long-standing precedent, the *McDonagh* court held that § 490.065 guides the admission of expert testimony in contested administrative proceedings. *McDonagh*, 123 S.W.3d at 154–55. In so holding, the Court broke no new ground; it simply relied on its own existing precedents to reach the self-evident conclusion that "[t]he standards for admission of expert testimony constitute ... a fundamental rule of evidence." *Id.*

In sum, we reject Cox's argument that it was not in a position to object to Dr. Myers' testimony based on § 490.065 until *McDonagh* was decided. Therefore, Cox waived this objection by failing to make it during Dr. Myers' depositions or at the hearing before the ALJ. *See Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 209 (Mo. banc 1991) (a party waives an objection that is not timely made). Point I is denied.

■ In Cox's second point, it argues that the Commission erred in refusing to strike the deposition testimony of Dr. Myers, or, alternatively, in refusing to remand the case for further evidentiary proceedings, because Dr. Myers' testimony fails to satisfy the standards for admissibility required by § 490.065. The basis for Cox's argument is that Hawthorne failed

to introduce competent and substantial evidence of the facts and data upon which Dr. Myers based his opinions. Cox's argument fails because no such objection was made during Dr. Myers' depositions or at the hearing before the ALJ. Therefore, the Commission properly denied the request to strike Dr. Myers' testimony or remand the case for further evidentiary development because this objection was waived. *Seabaugh,* 816 S.W.2d at 209; *Dorman v. State Bd. of Registration for Healing Arts,* 62 S.W.3d 446, 455 (Mo.App.2001). Point II is denied.

█ In Cox's third point, it argues the Commission erred in concluding that Hawthorne sustained a compensable injury or disability because she failed to offer credible medical testimony that her work was a substantial factor in causing any such injury or disability. We disagree. In Dr. Myers' testimony from his first deposition, he opined that Hawthorne had "a herniated lumbar disk at the L5–L6 level." Dr. Myers then gave the following testimony concerning the cause of Hawthorne's injury:

Q. [D]o you have an opinion as to whether her condition is job-related?

A. Yes, I do.

Q. What is that opinion?

A. My opinion is that it is work related, the work that she was doing at Cox Medical Center.

Q. Okay. And in what way is it work related?

A. Well, by the fact that she was sitting in a cubicle where she had the lower part of her torso in one position and the upper part of her torso twisted in an opposite position for a prolonged period of time gives you the perfect scenario for a typical disk herniation.

Q. Well, was this type of work she was doing then a substantial factor in her herniation?

[Objection by counsel omitted.]

A. It most certainly is a substantial factor.

Q. Will this particular, where she's twisting and she's in this situation, this kind of job activity, did it expose her to risk factors and elements that would cause this type of condition that she has?

A. Yes.

In Dr. Myers' second deposition, he reiterated his conclusion that Hawthorne suffered from a herniated disk at the level of L5–L6 in 1998. This herniation was a new condition that occurred in October 1998, even though Hawthorne had previously experienced problems at the level above this. Dr. Myers testified to a reasonable degree of medical certainty that Hawthorne's rotation and twisting on the job caused or contributed to cause this herniation. Dr. Myers' "bottom line opinion was that this activity herniated this disk." The Commission found the opinions of Dr. Myers to be credible. Therefore, Hawthorne did offer credible medical testimony that her work was a substantial factor in causing her herniated disk. Point III is denied.

█ In Cox's fourth point, it claims the Commission's finding that Hawthorne sustained a permanent partial disability of 12.5% to the body as a whole is not supported by competent and substantial evidence on the whole record. We disagree. The Commission is not bound by the experts' exact percentages of disability and is free to find a disability rating higher or lower than that expressed in medical testimony. *Sullivan v. Masters Jackson Paving Co.,* 35 S.W.3d 879, 885 (Mo.App.2001). That is because a claimant's "degree of disability is not solely a medical question." *Lytle v. T–Mac, Inc.,* 931 S.W.2d 496, 502 (Mo.App.1996). Determining a claimant's specific percentage of disability "is a finding of fact within the unique province of

the Commission." *Searcy v. McDonnell Douglas Aircraft Co.*, 894 S.W.2d 173, 179 (Mo.App.1995). We will not substitute our judgment for that of the Commission, even if this court would have reached a different conclusion. *Sifferman v. Sears, Roebuck and Co.*, 906 S.W.2d 823, 826 (Mo.App. 1995).

Here, Dr. Myers rated Hawthorne as having a permanent partial disability of 15% of the body as a whole based on her work-related, 1998 disk herniation. Cox's expert, Dr. Belz, opined that Hawthorne's 1998 disk herniation was not caused by her occupational exposures at work. He rated Hawthorne as having a permanent partial disability of 10% of the body as a whole from her 1990 herniation, and her disease continued to progress until May 1999. At that point, Dr. Belz rated Hawthorne as having a 15% permanent partial disability of the body as a whole, none of which he attributed to Hawthorne's employment. The ALJ found that Hawthorne suffered a permanent partial disability of 12.5% of the body as a whole as the direct result of her October 1998 injury, and the Commission adopted that finding.

It is up to the Commission to accept or reject medical evidence. *Bowman v. Zenith Radio Corp.*, 895 S.W.2d 276, 280 (Mo.App.1995). It found Hawthorne had a degree of disability lower than the rating assigned by her expert, but higher than the rating assigned by Cox's expert. Our independent review of the record leads us to conclude that the Commission's finding concerning Hawthorne's degree of disability is supported by competent and substantial evidence. The Commission's assessment will not be disturbed "where the percentage of disability, as here, is hotly contested." *Landers v. Chrysler Corp.*, 963 S.W.2d 275, 284 (Mo. App.1997); *see also Parker v. Mueller Pipeline, Inc.*, 807 S.W.2d 518, 522 (Mo. App.1991). Point IV is denied.

The Commission's award is affirmed.

SHRUM and BARNEY, JJ., Concur.