John O. MCDOWELL, Claimant-Respondent,

v.

MISSOURI DEPARTMENT OF TRANSPORTATION, Employer-Appellant,

and

Missouri Highway and Transportation Commission, Insurer-Appellant.

No. SD 34931

Missouri Court of Appeals, Southern District, Division One.

Filed: Aug. 29, 2017

ROSS A. BRIDGES, Columbia, MO, for Appellants.

JAMES J. SIEVERS JR, Brentwood, MO, for Respondent.

DON E. BURRELL, J.

The Missouri Department of Transportation[1] ("Employer") appeals the portion

---

1. Insurer, Missouri Highway and Transportation Commission, is included as Appellant on appeal. References to "Employer" shall also include "Insurer," and all references to "In-

of the workers' compensation award ("the award") that awarded John O. McDowell ("Claimant") $17,007.60 for permanent partial disability based on a psychiatric disability resulting from a June 2012 accident in which Claimant's right ankle was crushed by a "a large piece of asphalt[.]"[2]

■ Employer's first point claims the Labor and Industrial Relations Commission ("the Commission") erred in admitting the "written testimony" of a psychiatrist under section 287.210.7[3] because it violated Employer's federal and state constitutional due process rights[4] and right to cross-examination under section 491.070.[5] Employer's second point claims "there was not sufficient competent evidence" supporting the award for psychological injury because Claimant did not "submit any evidence of permanent disability ... demonstrated and certified by a physician within a reasonable degree of medical certainty[.]" *See* section 287.190.6(2).

Because Point 1 was not preserved for appellate review, and the psychiatrist's opinion constituted sufficient competent evidence to prove psychological injury, we affirm.

### Applicable Principles of Review and Governing Law

■ A reviewing court may modify, reverse, remand for rehearing, or set aside a workers' compensation award upon a finding that: (1) the commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the commission's factual findings do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. *Malam v. State, Dep't of Corr.*, 492 S.W.3d 926, 928 (Mo. banc 2016). *See also* section 287.495.1. We "examine the whole record to determine if it contains sufficient competent and substantial evidence to sup-

surer" shall also include "Employer." *See* section 287.030.2, which provides that "Employer" includes "Insurer" and/or "Insurer" includes "Employer."

2. The award also included $23,066.56 in permanent partial disability benefits for the injury to Claimant's right ankle. Employer does not challenge that portion of the award.

3. Section 287.210.7 provides that "[t]he testimony of a treating or examining physician may be submitted in evidence on the issues in controversy by a complete medical report and shall be admissible without other foundational evidence subject to compliance with the" procedures outlined in the subsection. Those procedures include "notice at least sixty days prior to the hearing to all parties and" a "reasonable opportunity to all parties to obtain cross-examination testimony of the physician by deposition." All statutory references are to RSMo 2016. All rule references are to Missouri Court Rules (2017).

4. Point 1 does not specify the constitutional provisions at issue. As discussed, *infra*, the argument supporting Point 1 identifies the constitutional provisions as U.S. Const.

amend. XIV, section 1, and Mo. Const. art. I, section 10.

5. Section 491.070 provides that "[a] party to a cause, civil or criminal, against whom *a witness has been called* and given some evidence, shall be entitled to cross-examine said witness[.]" (Emphasis added.) Employer's argument supporting Point 1 does not explain why section 491.070—which addresses a witness who "has been called"—controls the admission of a medical report under section 287.210.7 of a psychiatrist who was not called as a witness at the hearing and, as discussed more fully *infra*, the parties agree that said psychiatrist had died before the hearing. "When matters referenced as alleged error in a point relied on are not developed in the argument portion of a brief, they are deemed abandoned." *Whiteley v. City of Poplar Bluff*, 350 S.W.3d 70, 77 n. 4 (Mo. App. S.D. 2011). Here, in the absence of such development, we do not consider whether section 491.070 applies to the admission of the report of a psychiatrist not called as a witness at the hearing.

port the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003). We "must defer to the commission's findings on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence." *Malam*, 492 S.W.3d at 928.

## Evidentiary Summary and Procedural History

Claimant testified during an April 2016 hearing before an administrative law judge ("ALJ") that he was working as a crew leader for Employer in June 2012, and he had worked for Employer for 25 years. As a part of his job duties, Claimant patched pot holes, mowed right-of-ways, washed bridges, sawed concrete, ran jackhammers, plowed snow, and did "any type of highway maintenance that need[ed] to be done." On June 6, 2012, Claimant was in a ditch cut "approximately four feet deep" across a roadway, and he was raking gravel where a piece of pipe was to be installed. A "large piece of asphalt broke off the edge of the ditch and" fell on Claimant's leg, pinning him "to the side of the ditch" and breaking the lower portions of Claimant's right tibia and fibula.[6] Claimant's crew broke the asphalt into smaller pieces to get it off of him, and he was transported by ambulance to the hospital.

After undergoing surgery, Claimant returned to work "pretty quick" by working "an office job" for Employer "for quite a while." In January 2013, Claimant had a second surgery to graft bone from his hip into one of his injured leg bones, and the surgeon also added "some more hardware to" that bone. Claimant eventually returned to his position as a crew leader for Employer in April or May 2013.

Claimant continued to have pain and swelling in his leg, especially on days when he did "stationary flagging[,]" snow plowing, or pothole patching. Before the work injury, Claimant did "a lot of the sign work, climbing ladders, [and] moving replacement signs." After the work injury, Claimant could not "hardly work off of ladders." Claimant's supervisor made "reasonable accommodations" for Claimant because of the work injury, such as not having Claimant "flag . . . two days in a row."

Outside of work, Claimant's pain kept him from enjoying the use of his "WaveRunner" at the lake with his children. Claimant used to attend hockey games, but he went only once after the work injury due to the steps that he had to climb to reach his seat and the "tight compact position" of the seats. Claimant took prescription pain medicine at least twice a day in addition to over-the-counter pain medicine. On some days, he would elevate his leg and "put ice on it."

Claimant also "sought psychiatric treatment" from his "primary care physician's office" after "[i]t had been pointed out to [him] that [he] had changed and was very irritable." His prescribed antidepressants "worked really well for" about "five or six months and then [he] started getting depressed again." The antidepressant dosage was increased, and this "worked out well for awhile[,]" but he eventually "fell back in the same thing." The dosage was then "increased . . . to the highest dose possible[.]" At that level, Claimant was "holding [his] own[,]" but he thought that, based upon his past experience with the need to increase his medicine, he would eventually need "to go back for a different type of medicine."

In March 2014, psychiatrist Dr. Wayne A. Stillings evaluated Claimant, and his

---

6. For convenience, we will refer to these inju- ries collectively as "the work injury."

written report was admitted into evidence over Employer's objection.[7] Dr. Stillings interviewed Claimant, administered a series of tests, and reviewed Claimant's medical records. Dr. Stillings reported that his opinions regarding Claimant were based on these things and were held "to a reasonable degree of medical and psychiatric certainty[.]"

Dr. Stillings summarized as follows the information he obtained from Claimant about his current complaints related to the work injury:

Regarding his physical debility, it takes him longer to do his job and he does not do it as well, causing him to feel like he is letting down his 12- to 13-man crew. Activity outside the workplace is challenging as well and has significantly diminished. For example, whereas it used to take him one hour to mow his lawn, now it takes five hours because of frequent breaks and having to chop this task up into parts because of chronic pain. The physical activity, whether work or not, aggravates his chronic pain disorder and, thus, his depression. At work he is basically "toughing it out." Regarding pleasurable activities, he does these a lot less frequently because of the work injury.

Dr. Stillings also reported that Claimant had been referred by his nurse practitioner "for counseling, but, since [Claimant] was feeling better on the [antidepressant medicine], he decided not to pursue this." Dr. Stillings's psychiatric diagnoses of claimant were: "Pain Disorder Associated with Both Psychological Factors and a Physical Condition ([the work injury])" with "Mood Disorder with a Major Depressive-Like Episode due to a General Medical Condition ([the work injury])";

and "Obsessive-Compulsive and Avoidant Personality Traits, pre-existing." Dr. Stillings opined that the work injury was "the prevailing factor in causing [Claimant] to experience a chronic pain disorder with an associated 15% psychiatric permanent partial disability of the body as a whole and a mood disorder with an associated 10% psychiatric permanent partial disability of the body as a whole[.]" Dr. Stillings opined that Claimant "will need open-ended treatment with psychotropic medication for the remainder of his life due to the chronicity of his pain and mood disorders[.]"

In April 2015, another psychiatrist, Dr. Stacey L. Smith, M.D., evaluated Claimant, and Dr. Smith's written report and deposition testimony were admitted into evidence on behalf of Employer. Dr. Smith interviewed Claimant, administered a series of tests, and reviewed records provided her by Claimant's counsel. In Dr. Smith's "opinion, [Claimant] did develop some depressive symptoms as a result of his injury. Fortunately, these symptoms have responded well to medication. A[s] such, he chose not to follow-through with counseling suggested by his PMD [sic]." Dr. Smith diagnosed Claimant as having a "Mood Disorder NOS resulting from [the] work injury, largely resolved." In her deposition, Dr. Smith characterized Claimant as having "a few minimal complaints" regarding "any clinically meaningful psychiatric disability."

Dr. Smith testified that Employer had authorized her to provide treatment to Claimant, and she had her staff contact him about that, but she wanted to convey to Claimant that he was not being instructed to receive treatment from her. Claimant testified that he declined counseling with

Dr. Smith "[b]ecause there was no patient-client privilege with her[,]" although he also acknowledged that medical records discussing psychological or psychiatric issues were a part of his exhibits.

A January 2016 addendum report from Dr. Smith was received into evidence. The addendum indicated that, based upon Dr. Smith's review of her records and evaluation of Claimant, "and with the additional passage of time[, she did] not believe [that Claimant] ha[d] any permanent partial psychiatric disability based on [the] work injury."

For purposes of identifying the issues to be considered by the ALJ, counsel for the parties stipulated to various matters, including that Claimant "sustained an accident . . . arising out of and in the course of his . . . employment." Employer did "not dispute that the right ankle injury was medically causally related to the accident, but [Employer disputed] any sort of psychological injury[,]" and the parties also disputed "permanent partial disability."

The ALJ's findings included that Claimant "did receive psychiatric care after [the work injury] that was related to and caused by [the work injury]. The [ALJ found] that [Claimant] has a 2% permanent partial disability to his body as a whole as a result of his accident." The ALJ thus ordered Employer to pay Claimant "an additional $3,401.52 as a result of this disability." Claimant sought the Commission's review of the ALJ's finding of "2% permanent partial psychiatric disability of Claimant's body as a whole[.]"

The Commission's award modified the decision of the ALJ and found that Claimant "suffers from a psychiatric disorder attributable to coping with chronic pain as a result of his injury that has not resolved and is in need of treatment." The Commission found that Dr. Smith's opinion in the addendum "that [Claimant] sustained no permanent partial disability referable to his psychiatric condition is inconsistent with her [June 2015] offer of medical treatment." The Commission reasoned that Dr. Smith's revised opinion was issued nine months after she had evaluated Claimant "and in the absence of any further evaluation of [Claimant]." The Commission "credit[ed] Dr. Smith's [earlier] opinion that [C]laimant developed a mood disorder and depressive symptoms as a result of [the work injury,]" but it gave "no weight to her [addendum opinion] as to the *extent* of [C]laimant's permanent partial disability."

The Commission was "more persuaded by the opinion of Dr. Stillings" regarding Claimant's psychiatric disability, but it also concluded that "Dr. Stillings overstated the *extent* of [Claimant's] psychiatric disability." The Commission found that Claimant "sustained a 10% permanent partial disability of the body as a whole referable to a psychiatric disorder logically attributable to coping with chronic pain as a result of" the work injury. Based upon the stipulated compensation rate, "[E]mployer is liable to [Claimant] for permanent partial disability benefits in the amount of $17,007.60."

This appeal by Employer timely followed.

### Analysis

*Point 1—Constitutional Objections to Dr. Stillings's Report Were Waived*

In arguing that the Commission's application of section 287.210.7 violated Employer's constitutional rights to due process, Employer acknowledges that "[a]n allegation of a constitutional law violation must be made at the first available time." *Cf. Mo. Highway & Transp. Comm'n v. Merritt*, 204 S.W.3d 278, 284 (Mo. App. E.D. 2006) ("[c]onstitutional questions

must be raised at the earliest possible opportunity that good pleading and orderly procedure will permit given the circumstances"). "The purpose of a rule requiring a constitutional argument to be raised before an administrative agency is to give the agency a chance to apply the statute in a way that [the appellant] believes is constitutional." *Thatcher v. Trans World Airlines*, 69 S.W.3d 533, 547 (Mo. App. W.D. 2002).

■ Here, Employer argues that it "first raised the constitutional issue of due process with the [ALJ] at the final hearing, [thus] this issue was raised at the first available time." We disagree. Employer's objection to the ALJ regarding the admission of Dr. Stillings's report was that the doctor "passed away prior to [Employer] having the opportunity to depose him." Employer's counsel acknowledged that Dr. Stillings's report had "been offered pursuant to a 60 day notice, pursuant to [section] 287.210.7[,]" and the report had been provided "in 2014." [8] Employer's counsel acknowledged that Dr. Stillings passed away on March 16, 2015, but he argued that Employer had not had a reasonable opportunity to depose Dr. Stillings because "[i]t was reasonable for [Employer] to secure their [sic] own expert opinion on these issues before depositions were requested and the opinion of Dr. Smith was obtained after Dr. Stillings passed away." These arguments did not constitute an assertion that Employer's constitutional rights to due process had been violated.

■ Further, "[t]o properly raise a constitutional issue, a party must … specifically designate the constitutional provision alleged to have been violated, such as by explicit reference to the article and section, or by quotation from the particular provi-

sion[.]" *Merritt*, 204 S.W.3d at 284; *accord J.A.D. v. F.J.D.*, 978 S.W.2d 336, 339 (Mo. banc 1998). *See also* Rule 84.04(d)(2)(B) and (C). Point 1, which contains no such reference, is denied.

*Point 2—Evidence Supporting
Permanent Partial Disability
from Psychological Injury*

Employer's second point asserts that Claimant "has failed to submit any evidence of permanent disability … as required by section 287.190.6(2)."

■ Section 287.190.6(2) provides that "[p]ermanent partial disability or permanent total disability shall be demonstrated and certified by a physician. Medical opinions addressing compensability and disability shall be stated within a reasonable degree of medical certainty." "The Commission is not bound by the experts' exact percentages of disability and is free to find a disability rating higher or lower than that expressed in medical testimony." *Hawthorne v. Lester E. Cox Med. Centers*, 165 S.W.3d 587, 594 (Mo. App. S.D. 2005).

Employer argues that "[b]ecause Dr. Stillings's testimony shall not be admitted into evidence, [Claimant] has failed to submit any evidence of permanent partial disability demonstrated by a physician nor has he provided any medical opinion addressing compensability and disability within a reasonable degree of medical certainty." Point 2 does not state a legal reason for its claim that Dr. Stillings's testimony was inadmissible, and the argument supporting the point also fails to offer any rationale for excluding Dr. Stillings's report. Instead, Employer seems to rely entirely upon its Point-1 claim that the admission of the report violated Em-

---

**8.** Based on this acknowledgement, Employer's motion to strike the notice of submission

of Dr. Stillings's report dated July 21, 2014 is denied as moot.

ployer's constitutional rights. Due to our denial of that point, Employer's conclusion that no medical evidence supported Claimant's permanent disability claim also fails.

 Dr. Stillings opined to a "reasonable degree of medical and psychiatric certainty" that the work injury was "the prevailing factor in causing [Claimant] to experience a chronic pain disorder with an associated 15% psychiatric permanent partial disability of the body as a whole and a mood disorder with an associated 10% psychiatric permanent partial disability of the body as a whole[.]" The Commission also credited Dr. Smith's opinion that Claimant developed a mood disorder as a result of the work injury. "[W]e defer to the Commission on credibility issues and the weight to be given a medical expert's opinion." *Maness v. City of De Soto*, 421 S.W.3d 532, 543 (Mo. App. E.D. 2014). But while the Commission found Dr. Stillings's opinions more persuasive on "the nature and extent of [C]laimant's psychiatric disability as a result of [the] work injury" than Dr. Smith's opinion, it also determined that "Dr. Stillings overstated the *extent* of [Claimant's] psychiatric disability." The Commission did not err in doing so as it was "free to find a disability rating higher or lower than that expressed in medical testimony." *Hawthorne*, 165 S.W.3d at 594.

Point 2 is also denied, and the award of the Commission is affirmed.

MARY W. SHEFFIELD, P.J.— CONCURS

GARY W. LYNCH, J.—CONCURS