**Julius GARCIA, Claimant/Appellant,**

v.

**ST. LOUIS COUNTY,**
**Employer/Respondent,**

v.

**TREASURER OF STATE OF MISSOURI**
**as Custodian of Second Injury Fund,**
**Additional Party/Respondent.**

No. 67669.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 5, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 29, 1996.

Application to Transfer Denied
March 26, 1996.

Harry J. Nichols, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Robert J. Amsler, Jr., Assistant Attorney General, St. Louis, for Respondent.

CRANDALL, Judge.

Claimant, Julius Garcia, appeals from the decision of the Labor and Industrial Relations Commission (Commission) affirming the award of the administrative law judge (ALJ) which awarded him workers' compensation benefits for a work related injury for which his employer, St. Louis County, was liable and for a preexisting disability for which the Treasurer of Missouri as Custodian of the Second Injury Fund (Second Injury Fund) was liable. We affirm.

The evidence adduced at the hearing established that on August 16, 1989, claimant was working as a police officer in the employ of St. Louis County and had been so employed for approximately 27 years. He was riding in his patrol car when another vehicle struck it from behind. He immediately experienced severe pain in his lower back and was treated in the hospital emergency room. Subsequent diagnostic tests revealed a midline disc protrusion at the L4–5 level. Claimant underwent medical treatment, which included physical therapy.

At the time of the hearing, claimant was still experiencing low back pain which radiated down both legs. He had difficulty tying his shoes, walking up and down stairs, bending from the waist, lifting items, and raising himself from a sitting position. He was unable to stand up straight and walked with a

cane for support. He sometimes experienced numbness in his left leg. In addition, he had difficulty making a fist, displayed reduced grip strength, and experienced difficulty in gripping and shooting his gun. His handwriting had also deteriorated.

Prior to the 1989 accident, claimant suffered several injuries while on the job as a police officer. In 1965, an automobile struck claimant, resulting in a back injury. That same year, he fell from a cliff, landing on his back. In 1984, he sustained an injury to the left groin, resulting in a 17.5 percent degree of permanent partial disability of the body as a whole. In 1987, he was kicked and sustained an injury to the right groin and required surgery for a hernia repair. Again in 1987, he sustained an injury to the right groin and testicle and underwent an operation to repair a hernia and to remove his testicle, resulting in a 17 percent degree of permanent partial disability of the body as a whole. In 1988, he sustained an injury to his right hand, resulting in a 20 percent permanent partial disability of the right upper extremity through the level of the right wrist. He also sustained nine separate breaks to his nose and jammed his knuckle or finger seven times.

Claimant's examining physician's deposition testimony and medical records indicated a partially calcified central disc protrusion at the L5–S1 level, which was attributed to a pre-existing condition. He observed that claimant walked with a "hesitating shuffling gait" and displayed a slight tremor in both hands. The physician attributed these symptoms to early signs of Parkinson's disease. In giving his opinion that claimant was permanently and totally disabled, he stated:

> I cannot say that it is the incident of August '89 only that made him totally disabled. There are other factors. And then one would have to ask well, if he did not have the Parkinson's like problems, did not have the strange sensory changes involving both legs, . . . what would his disability be then. In other words, trying to isolate the percentage of disability that one could . . . ascribe only to this incident of '89. I certainly would not come up with a total disability figure, but based upon what dis-

ability an individual would have who only sustains a disk [sic] injury, I would come up with a 30 percent permanent partial, but it's obvious this individual is totally disabled.

The physician made no findings with regard to the disabling effects of any of claimant's preexisting conditions.

The physician who testified by way of deposition on behalf of the Second Injury Fund stated that the injury to claimant's back in August 1989 permanently disabled claimant and rated the percentage of disability at 15 percent of the person as a whole. As to claimant's preexisting injuries, she ascribed permanent partial disability to claimant's hernias (5 percent of the lower right extremity at the inguinal region), to his right hand (10 percent of the right upper extremity at the level of the PIP joint), and to his neck (3 percent of the person as a whole). With regard to the impact of claimant's Parkinson's disease symptoms, the physician testified that there was no disability caused by those symptoms and did not rate the condition. In her opinion, claimant was employable in the open market in a "seated-duty job if he had some vocational training," but with the restrictions that there be "no lifting greater than thirty pounds, no excessive bending or twisting at the waist, and no prolonged standing or walking." At the time of the hearing, claimant had received no vocational training.

A rehabilitation counselor testified by way of deposition that any work undertaken by claimant could only require "a light level of exertion which would allow alternate sitting and standing." He felt claimant's skills, such as patrolling, surveillance, and investigation, were transferable to private security employment, either in a supervisory capacity or in the training of guards. He also suggested that claimant work as a police dispatcher.

The ALJ found that "claimant presented no evidence that [he] was permanently totally disabled due to either the work injury or the work injury combined with preexisting disabilities." The ALJ found claimant had a 25 percent permanent partial disability of the body as a whole due to the accident of August 1989. Combined with the preexisting

condition of the hernias, the ALJ found a 5 percent permanent partial disability to the body as a whole. The Commission affirmed the ALJ's award of workers' compensation benefits to claimant without making additional findings of fact or conclusions of law.

In reviewing a workers' compensation case, the duty of the appellate court is to determine whether the Commission's award is supported by competent and substantial evidence upon the whole record. *Davis v. Research Medical Center*, 903 S.W.2d 557, 565 (Mo.App.W.D.1995). This does not mean that the appellate court may substitute its own judgment on the evidence for that of the Commission. *Id.* The review procedure does authorize the court to decide whether the Commission could have reasonably made its findings and award, upon consideration of all of the evidence before it. *Id.* To resolve the issue of the reasonableness of the findings and award, the appellate court uses a two-step procedure. *Id.* The first step is for the reviewing court to examine the record, together with all reasonable inferences to be drawn from the evidence therein, in the light most favorable to the findings and award of the Commission to determine whether they are supported by competent and substantial evidence. *Id.* The second step is for the court to determine whether the Commission's findings and award, even if supported by some competent, substantial evidence, were nevertheless clearly contrary to the overwhelming weight of the evidence contained in the whole record before the Commission. *Id.* Thus, while the court views the evidence in the light most favorable to the award, the opposing, unfavorable evidence must be considered and cannot be discarded or disregarded when the appellate court performs the second step of the analysis. *Id.* at 566. In other words, the factual findings and the resulting award of the Commission should be set aside on appeal if they are not supported by competent and substantial evidence; or, if supported by such evidence, if they are clearly contrary to the overwhelming weight of the evidence. *Id.* at 565.

Claimant's first claim of error is that the Commission erred in finding that he was not permanently and totally disabled as a result of the combination of his previous disabilities with his last injury in August 1989. He argues that the examining physician for the Second Injury Fund "clearly testified that she did [not] consider the Parkinson's like symptoms and that [claimant] would be employable in a seat type job only if he were afforded vocational training;" and in view of the fact that no such training had been provided at the time of the hearing, claimant remained permanently and totally disabled.

Total disability is defined as the "inability to return to any employment and [does] not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." § 287.020.7, RSMo (1994). In determining if claimant is totally disabled, the Commission must decide whether, in the ordinary course of business, any employer would reasonably be expected to hire him in his present physical condition and reasonably expect him to perform the work for which he is hired. *Talley v. Runny Meade Estates, Ltd.*, 831 S.W.2d 692, 694 (Mo.App.E.D.1992).

In computing permanent and total disability in the situation where claimant suffers from a previous disability, the ALJ or the Commission first determines the degree of disability as a result of the last injury. The ALJ or the Commission then determines "the degree or percentage of employee's disability that is attributable to *all injuries or conditions existing at the time the last injury was sustained.* . . ." § 287.220.1, RSMo (1994) (emphasis added). Thus, the Second Injury Fund is not liable for any progression of claimant's preexisting disabilities not caused by claimant's last injury. *See Frazier v. Treasurer of Missouri as Custodian of Second Injury Fund*, 869 S.W.2d 152, 155 (Mo.App.E.D.1993).

In the instant action, the evidence was that prior to the accident of August 1989, claimant functioned adequately in his job as a police officer and had not been diagnosed with Parkinson's disease. Claimant's own physician rated the disability attributable to claimant's last injury in August 1989 at 30 percent permanent partial disability. He testified

that it was difficult to rate claimant's disability as a result of the 1989 accident because of the impact of the Parkinson's disease on claimant's ability to work. In his opinion, however, claimant was permanently and totally disabled. He did not testify about the nature or extent of any of claimant's disabilities in existence at the time of the August 1989 injury.

In addition, the physician for the second injury fund noted the symptoms of Parkinson's disease, but did not ascribe any disability to claimant as a result of that disease. She did, however, rate the disability attributable to various preexisting conditions and found that claimant was not permanently and totally disabled.

The ALJ found that the Parkinson's disease was not "pled or proven as a preexisting condition." There was no evidence that the Parkinson's disease was a condition existing at the time of the August 1989 injury or that the disease worsened as a result of the August 1989 injury. Even assuming that the Parkinson's disease combined with the last injury and the other preexisting conditions rendered claimant permanently and totally disabled, there was no evidence which would support the liability of the Second Injury Fund for any disability related to the Parkinson's disease. The Commission's finding that claimant was not permanently and totally disabled as a result of his combined injuries was supported by substantial evidence and was not contrary to the overwhelming weight of the evidence. Claimant's first point is denied.

We have reviewed the remaining points on appeal. The decision of the commission is supported by competent and substantial evidence on the whole record; no error of law appears. The points are denied. Rule 84.16(b).

The decision of the Commission is affirmed.

CRAHAN, P.J., and DOWD, J., concur.