Edward LAMMERT, Claimant/Appellant,

v.

VESS BEVERAGES, INC., Employer/Respondent, and Treasurer Of The State Of Missouri, as Custodian of the Second Injury Fund, Additional Party/Respondent.

No. 72966.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 28, 1998.

LeRoy Crouther, Jr., Deborah B. Wafer, St. Louis, for appellant.

Michael F. Banahan, Evans & Dixon, Mary Anne Lindsey, St. Louis, for respondent Vess Beverages, Inc.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Woodie J. Curtis, Jr., Asst. Atty. Gen., St. Louis, for respondent Missouri State Treasurer.

CRANE, Presiding Judge.

In this workers' compensation case, claimant, Edward Lammert, appeals from the Labor and Industrial Relations Commission [Commission] award denying compensation for arthritis in both of his knees and denying relief from the Second Injury Fund. Claim-

ant asserts that the Commission exceeded its powers in finding that he failed to prove a medical causal relationship between his work conditions and his arthritis because 1) the accident and causation were admitted as a result of the employer's failure to file a timely answer and 2) the Commission ignored medical testimony establishing causation and relied on invalid medical testimony. Claimant further asserts that the Commission erred in finding that there was insufficient evidence to establish claimant's knee disability on January 20, 1993 for purposes of Second Injury Fund liability. We affirm.

*Factual Background*

Claimant was employed by Vess Beverages, Inc. for thirty-three years as a delivery truck driver. While performing his delivery duties, claimant would jump on and off the trailer and testified that he felt the jumping put a strain on his knees. On January 20, 1993 while claimant was making a soda delivery in Illinois, he slipped and fell on some ice and landed on his left shoulder. Claimant also hit his left hip and left knee. He was taken to Barnes Hospital emergency room where he was diagnosed with a dislocated left shoulder and mild knee strain. The shoulder fracture was reduced and claimant was released. Claimant underwent a course of physical therapy and returned to his normal work duties in March of 1993. He retired in May of 1994.

*Procedural History*

On May 18, 1994 claimant filed a workers' compensation claim concerning the January 20, 1993 injury. Claimant alleged that on January 20, 1993 he injured his left shoulder, left hip, and left knee when he fell on some ice while making a delivery for employer. Claimant also made a claim against the Second Injury Fund alleging that he sustained injury to both knees as a result of multiple trauma over the preceding years. The claim was ultimately settled with employer for a lump sum in the amount of $10,932.31 based on a disability rating of 20% of the left shoulder. Claimant's Second Injury Fund claim was left open.

On October 26, 1994 claimant filed a second claim for compensation. In that claim he alleged that both of his knees sustained an occupational disease from the repeated trauma of jumping off the soda delivery trucks. Claimant also made a claim against the Second Injury Fund for permanent partial disability due to the 20% disability to his left shoulder from the January 20, 1993 injury. The Division of Workers' Compensation acknowledged receipt of claimant's claim on November 10, 1994. Employer did not file its answer until February 17, 1995. On January 27, 1997 the ALJ issued his award denying claimant's claim for compensation. In his findings of fact and conclusions of law, the ALJ found: "Claimant has failed to prove a medical causal relationship between his arthritis and his work conditions under the new statutory standards. The competent and substantial medical testimony in the record demonstrates that claimant's osteoarthritis was clearly not work related."

Also on January 27, 1997 the ALJ entered his award denying claimant's Second Injury Fund claim for the January 20, 1993 fall. In those findings of fact and conclusions of law, the ALJ found:

As of the date of claimant's injury on January 20, 1993, no one has given an opinion as to the extent of disability in claimant's knees. Claimant's knee problems are degenerative and progressive and there is insufficient evidence to establish the extent of claimant's knee disability on January 20, 1993. This is necessary in order to establish Second Injury Fund liability.

Claimant filed an Application for Review with the Industrial Commission. The Commission issued its Final Award Denying Compensation on both claims.

*Discussion*

When a workers' compensation claim is appealed, we review only questions of law. Section 287.495.1 RSMo (1994). We can modify, reverse, remand for rehearing, or set aside awards based on factual determinations only on the grounds prescribed by statute; that is, if the Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent and substantial evidence to

support the award. *Id.; Johnson v. Denton Const. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995).

We review decisions of the Commission which are clearly interpretations or applications of law for correctness without deference to the Commission's judgment. *West v. Posten Const. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991); *Harrison v. Harrison Turf Co.*, 908 S.W.2d 159, 161 (Mo.App.1995). Findings of ultimate facts reached through application of rules of law, rather than by natural reasoning based on facts alone, are conclusions of law. *Merriman v. Ben Gutman Truck Service, Inc.*, 392 S.W.2d 292, 297 (Mo.1965). Where the evidentiary facts are not disputed, the Commission's award becomes a question of law. *Id.*

Where decisions are based on determinations of fact, we review the whole record in the light most favorable to the decision. *West*, 804 S.W.2d at 744. We defer to the Commission when it resolves issues concerning credibility and weight to be given to conflicting evidence. *Mann v. City of Pacific*, 860 S.W.2d 12, 14 (Mo.App.1993). In the absence of fraud, the factual findings made by the Commission within its powers are conclusive and binding. Section 287.495.1.

For his first point claimant contends that the Commission exceeded its powers in finding that he failed to prove a medical causal relationship between his arthritis and his work conditions. Claimant argues that the accident and the causal relationship were admitted because the employer failed to file its answer within 15 days of the Division's acknowledgment of his claim, and the Commission relied upon medical testimony that was contrary to existing medical knowledge and ignored medical testimony regarding causation.

The employer and/or insurer must file an answer within fifteen days of the date that the Division of Workers' Compensation acknowledges receipt of the employee's claim for compensation. 8 C.S.R. 50–2.010(12); *Jackson v. Midwest Youngstown Industries*, 849 S.W.2d 709, 711 (Mo.App.1993). The Division acknowledged receipt of claimant's claim on November 10, 1994. However, employer did not file its answer until February 17, 1995 and thus did not meet the fifteen day deadline. If the employer and/or insurer fails to file an answer to a claim within the fifteen day period, the factual statements in the claim are deemed admitted. 8 C.S.R. 50–2.010(13), *construed in Jackson*, 849 S.W.2d at 711. *See also, Lumbard–Bock v. Winchell's Donut Shop*, 939 S.W.2d 456, 457 (Mo.App.1996). The failure to file a timely answer, however, cannot result in the admission of legal conclusions contained in the pleading. *Lumbard–Bock*, 939 S.W.2d at 457–58.

In Box 15 of his claim for compensation, claimant alleged "Working as a soda truck driver for thirty three years and both knees sustained occupational disease from the repeated trauma of jumping off the trucks." Because employer failed to file a timely answer, these facts as stated in employee's claim are deemed admitted.

However, the admission goes only to the facts alleged. There was no admission that claimant had suffered arthritis as a result of jumping off trucks, that arthritis was an occupational disease, that claimant suffered a "compensable" occupational disease or that the work was a substantial factor in causing the arthritis.

Section 287.067 of the 1993 amendments defines occupational disease as follows:

1. In this chapter the term **"occupational disease"** is hereby defined to mean, unless a different meaning is clearly indicated by the context, an identifiable disease arising with or without human fault out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the diseases follow as an incident of an occupational disease as defined in this section. The disease need not to have been forseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.

An occupational disease is not "compensable" if "work" is merely "a triggering or precip-

itating factor" of the injury. Section 287.067.2; *see also* Section 287.020.2. Rather, work must be a substantial factor in the cause of the resulting medical condition or disability. Section 287.020.2. Because no facts were alleged and admitted which would support a conclusion that claimant suffered arthritis as a result of jumping off trucks and his arthritis was a compensable occupational disease, the Commission was free to resolve the issue of whether arthritis was an occupational disease and whether it was compensable under the above definitions.

Next, claimant argues that the Commission erred in relying upon medical testimony that was contrary to existing medical knowledge and ignored medical testimony regarding causation. In support of this contention, claimant refers in his brief to 1C GRAY AND GORDY, ATTORNEY'S TEXTBOOK OF MEDICINE [Section] 19.50 (Third Edition 1996) and 30 PROOF OF FACTS 2d 520. These texts were not in evidence before the ALJ or the Commission and may not be considered on appeal. *Wilson v. ANR Freight Systems, Inc.*, 892 S.W.2d 658, 662 (Mo.App.1994); *see also* Section 287.495.1 RSMo (1994).

The only medical testimony before the ALJ establishing a causal connection between claimant's work conditions and his arthritis was that of an allergist, Dr. Robert Onder, who testified that repetitive trauma from work was a contributing factor in claimant's arthritis. Dr. Onder was not trained as an orthopedist. On the other hand, two orthopedic surgeons, Dr. Michael Ralph and Dr. Edward Schlafly, testified that trauma of this nature does not cause arthritis. Dr. Ralph examined claimant on September 6, 1995. Dr. Ralph diagnosed claimant with severe end stage medial joint space arthritis of both of his knees. Dr. Ralph opined to a reasonable degree of medical certainty that claimant's arthritis was not related to claimant's employment and that his employment activities were not a substantial factor in the cause of the resulting arthritis. Dr. Ralph testified that arthritis is not a disease, but rather a part of the aging process and that repeated minor trauma has nothing to do with developing osteoarthritis. Dr. Schlafly reviewed claimant's medical records and concluded that the cause of his arthritis was unknown. He further testified that arthritis

rarely relates to an episode of trauma and then only in cases of an intraarticular fracture.

The Commission is the sole judge of the credibility of the witness and the weight and value of the evidence. *Wiele v. National Super Markets, Inc.*, 948 S.W.2d 142, 148 (Mo.App.1997). Unless it is against the overwhelming weight of the evidence, the Commission's determination regarding conflicting medical opinion is not to be disturbed. *Id.* It is in the Commission's sole discretion to determine the weight to be given expert opinions. *Smith v. Climate Engineering*, 939 S.W.2d 429, 431 (Mo.App.1996). The Commission was free to believe the opinions of Drs. Ralph and Schlafly and to disregard Dr. Onder's testimony regarding causation.

The Commission did not exceed its powers in concluding that claimant failed to show that his work conditions were a substantial factor in causing his arthritis. Point one is denied.

For his second point claimant asserts that the Commission erred in finding that there was insufficient evidence to establish claimant's knee disability on January 20, 1993 for purposes of Second Injury Fund liability. Claimant argues that there were two disability ratings concerning the knee from which the Commission could have made a determination.

In its findings of fact and conclusions of law denying claimant relief from the Second Injury Fund, the Commission found:

As of the date of claimant's injury on January 20, 1993, no one has given an opinion as to the extent of disability in claimant's knees. Claimant's knee problems are degenerative and progressive and there is insufficient evidence to establish the extent of claimant's knee disability on January 20, 1993. This is necessary in order to establish Second Injury Fund liability.

In order to recover permanent disability compensation from the Second Injury Fund, claimant had the burden to prove, among other things, that he had a preexisting permanent partial disability of such seriousness as to constitute a hindrance or obstacle to his employment or reemployment.

Section 287.220.1 RSMo (1994); *Leutzinger v. Treasurer*, 895 S.W.2d 591, 593 (Mo.App. 1995). The preexisting disability necessary to trigger Second Injury Fund liability is permanent partial disability existing at the time the work-related injury was sustained. Section 287.220.1 RSMo (1994); *Garcia v. St. Louis County*, 916 S.W.2d 263, 266 (Mo.App. 1995). The Second Injury Fund is not responsible for progression of preexisting conditions or new conditions that develop after and unrelated to the work injury. *Id.*

In order to compute the total disability compensation to which an employee is entitled from the Second Injury Fund, the Commission must determine not only that a preexisting permanent partial disability existed, but also the degree or percentage of the employee's disability that is attributable solely to the preexisting condition at the time of the last injury. Section 287.220.1 RSMo (1994); *Carlson v. Plant Farm*, 952 S.W.2d 369, 373 (Mo.App.1997).

Two disability ratings of claimant's knees were admitted into evidence: Dr. Onder's June 12, 1995 report which rated claimant's knees at 60% permanent partial disability each and Dr. Ralph's September 6, 1995 report which rated claimant's disability at 50% of each knee. Dr. Onder also testified that the condition of claimant's knees was degenerative and progressive.

The Commission was within its powers in concluding that the 1995 ratings were not probative of the disability that existed in claimant's knees more than two years earlier on January 20, 1993. The Commission's finding that claimant failed to carry his burden of proof regarding the extent of permanent partial disability that claimant had as of January 20, 1993, the date of his work-related injury, was supported by competent and substantial evidence and was not against the overwhelming weight of the evidence. Point two is denied.

The Commission's award is affirmed.

RHODES RUSSELL and JAMES R. DOWD, JJ., concur.