Tammy L. SICKMILLER, Claimant–Appellant/Respondent,

v.

TIMBERLAND FOREST PRODUCTS, INC., Employer–Respondent/Cross–Appellant,

and

Treasurer of the State of Missouri—Custodian of the Second Injury Fund, Respondent/Cross–Appellant.

Nos. SD 32257, SD 32277, SD 32291.

Missouri Court of Appeals, Southern District, Division Two.

July 18, 2013.

112

---

Randy C. Alberhasky, Springfield, MO, for appellant-respondent.

Patricia L. Musick, Springfield, MO, and, Douglas M. Greenwald, Kansas City, KS, for Employer.

Cara L. Harris, Springfield, MO, for Resp/Cross–Appellant, SIF.

Tammy L. Sickmiller ("Claimant") sustained a back injury while lifting a wooden pallet in the course of her employment with Timberland Forest Products, Inc. ("Employer"). The Labor and Industrial

Relations Commission ("the Commission") found that Claimant's back injury, combined with her pre-existing physical and psychological disabilities, rendered her permanently, totally disabled and awarded her benefits for reimbursement of past medical expenses and future medical care. Feeling less than satisfied with the decision for varying reasons, Claimant, Employer, and the Missouri State Treasurer as Custodian of the Second Injury Fund ("the Fund") all appeal.

Claimant asserts the Commission erred in refusing to assess costs against Employer pursuant to section 287.560.[1] Employer challenges as unsupported by substantial and competent evidence the Commission's findings that Claimant was: (1) rendered permanently and totally disabled as a result of the work-related injury; and (2) entitled to past and future medical treatment. The Fund claims the Commission erred in ordering it to pay Claimant permanent total disability benefits because Claimant's inability to be employed was caused by her worsening psychological condition rather than her work-related accident.

Finding no merit in any of these claims, we affirm the award of the Commission.

## Standard of Review

Our review is limited to a determination of whether the Commission's decision is "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, sec. 18. We may modify, reverse, remand, or set aside the Com-

mission's award only on the following grounds:

(1) That the [C]ommission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the [C]ommission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1. "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

We review issues of law *de novo*, but we defer to the Commission on issues of fact, including the credibility of witnesses and the weight to be given their testimony. *Sell v. Ozarks Med. Ctr.*, 333 S.W.3d 498, 506 (Mo.App. S.D.2011). "The Commission is free to believe or disbelieve any evidence." *Underwood v. High Road Indus., LLC*, 369 S.W.3d 59, 66 (Mo.App. S.D.2012). "If the evidence before the Commission would warrant either of two opposed findings, we are bound by the administrative determination." *RPCS, Inc. v. Waters*, 190 S.W.3d 580, 583–84 (Mo.App. S.D.2006).

## Factual and Procedural Background [2]

Claimant provided the following testimony. In 2007, she worked for Employer as a "grader/stacker." Her responsibilities included reviewing boards as they came off the conveyor belt and stacking them on separate pallets according to their type.

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. The facts are taken from the testimony and evidence produced at the February 25, 2010 emergency hearing ("the emergency hearing") before an administrative law judge ("the ALJ") and at the final hearing held before the

ALJ on September 7, 2011. Some witnesses testified in person. Others provided their testimony by deposition and/or written report. All evidence referenced in this opinion was received into evidence. All parties participated in both hearings, except the Fund, which participated only in the final hearing.

On the morning of September 28, 2007, Claimant was lifting an empty pallet when her back "popped" and her "lower right abdomen started hurting." Claimant notified her supervisor and filled out an accident report with Employer. Claimant did not return to work that day.

At the time of her September 28, 2007 work injury ("work injury"), Claimant suffered from a preexisting psychological disability (depression) for which she received treatment in 2000. Claimant attributed her mental condition at that time to financial and marital difficulties. Claimant also had a history of suicidal ideations that began when she lost custody of her children sometime between 2000 and 2001. Claimant had also been treated for bilateral carpal tunnel syndrome as the result of a work-related injury she suffered when working in 1999 for a previous employer. As to the latter, an evaluation from September 1999 by Dr. Jeffrey Mutchler indicated that Claimant was "rate[d] out at 13% whole person [p]ermanent [p]artial [i]mpairment" based upon the injuries to Claimant's right hand and wrist. The August 1999 "final report" of Dr. Jeffrey Woodward "recommend[ed] a permanent partial impairment rating of 15% at the 175–week level for the right wrist/hand work-related conditions[.]"

On the Monday after Claimant suffered the work injury, she went to the emergency room because the pain in her back and lower abdomen was worsening. Claimant was given painkillers, and she was referred to Dr. Eck for evaluation of a possible hernia. Claimant also received treatment from a nurse practitioner, who ordered an MRI of Claimant's abdomen and pelvis.[3] On October 8, 2007, Dr. Eck saw Claimant and determined that she might have suffered a strain in her lower back.

On October 10, 2007, Employer authorized Claimant to see Dr. Jordan, who diagnosed her as having a lumbosacaral strain and an abdominal wall strain. Dr. Jordan recommended physical therapy, but Employer did not authorize the treatment. Dr. Jordan also gave Claimant lifting restrictions, but Employer did not have any light-duty work for Claimant to perform that would meet those restrictions. Claimant remained off work through October 31, 2007, when Dr. Jordan discharged her to return to work without limitations.

Although Claimant returned to work at that time, she was still experiencing lower back pain, and she had to have assistance to perform her job responsibilities. In May and June of 2008, Claimant's legs started going numb and "giving out[.]" She was also under a lot of stress and was having marital problems. Claimant began seeing Dr. Rakestraw for her continuing pain. Dr. Rakestraw told Claimant that she was not able to work any longer, and he provided her with "no-work" slips through August 2008, which Claimant turned in to her supervisors. Claimant last worked for Employer on June 25, 2008.

Claimant filed her claim for compensation in July 2008. It asked that Employer authorize additional care for her lower-back injury and her continuing pain. Employer denied the claim on the basis of Dr. Jordan's discharge on October 31, 2007. Claimant then continued to seek and receive treatment on her own. On July 2, 2008, another MRI performed on Claimant revealed "disc bulging and an annular margin tear L4–5 along with facet joint hypertrophy at L3–4, L4–5 and L5–S1." Claimant received epidural injections in her lower back to help relieve her pain.

3. The MRI indicated that Claimant had "[n]o abdominal wall hernias."

Claimant was also being treated for worsening depression, and she was hospitalized on multiple occasions for having suicidal thoughts.

On April 2, 2009, Dr. Bennoch conducted an independent medical evaluation of Claimant. In his resulting written report, Dr. Bennoch opined that Claimant needed additional evaluation for a possible nerve impingement involving a disc and that Claimant "has not reached maximum medical improvement." Because of this, Dr. Bennoch did not provide "an impairment rating" pending "further evaluation and treatment[.]" [4] Dr. Bennoch was able to opine that the work injury "was the prevailing cause of injury to the low back resulting [in] persistent low back pain and right radiculopathy" and that the work injury resulted in "an industrial impairment that would be a hindrance to employment or reemployment."

Dr. Bennoch also opined that Claimant had "a 20% permanent partial impairment to the body as a whole rated at the brain due to severe depression." He attributed 15% to "preexisting depression and 5% to worsening depression secondary to the [work] injury." Concerning other pre-existing impairments hindering employment, he assigned 20% impairment to the right upper extremity and 10% impairment to the left upper extremity as a consequence of bilateral carpal tunnel syndrome. Dr. Bennoch opined that "[t]he combination of [Claimant's] impairments does create a substantially greater impairment than the total of each separate injury and illness, and a loading factor should be added." He concluded that Claimant had been temporarily and totally disabled since June 2008 and would continue to be so until she received further evaluation and treatment.

On November 19, 2009, Dr. Olive examined Claimant. Dr. Olive testified by deposition that Claimant suffered from chronic back pain. Dr. Olive initially indicated that Claimant's pain was unrelated to her work injury. After considering additional medical records presented during the deposition, he changed his opinion and stated that Claimant's pain was caused by her work injury. Presumably based on that change of opinion, Employer agreed on February 23, 2010 to authorize treatment of Claimant's lower back pain by Dr. Olive. Employer maintained that it was not responsible for any temporary total disability benefits going back to the work injury because "none of [Claimant's] treating doctors [had] kept her off work based on the low back condition."

After the emergency hearing, the ALJ concluded that Claimant was temporarily totally disabled on two different occasions: the one-month period during October 2007 before Dr. Jordan released her to return to work without restrictions and from June 26, 200[8] through the date of the hearing. The ALJ awarded Claimant benefits for those periods, plus future medical care. The ALJ did not find Dr. Bennoch's opinion credible and determined that Claimant's "work injury did not contribute to any need for mental health treatment." The ALJ also denied Claimant's request for costs under section 287.560.

Following the temporary award, Dr. Lennard evaluated Claimant. Dr. Lennard diagnosed Claimant with a lumbar strain and major depression. Dr. Lennard opined that the work injury "was the prevailing factor in the onset of [Claimant's] lumbar strain[,]" but he found that she had reached maximum medical improvement

4. Dr. Bennoch regularly used the term "impairment" in his report. In its award, the Commission substituted the word "disability" for "impairment" when discussing Dr. Bennoch's findings.

and did not require further treatment for her lower back. He assigned Claimant 10% permanent partial disability "to the body as a whole for her lumbar spine[,]" with 5% attributable to the work injury and 5% attributable to degenerative changes. He "strongly advised" Claimant to seek treatment for her depression, but he noted that given this condition and other mental health issues, it was "very unlikely any form of treatment directed at her low back including medications would alter her subjective complaints of pain."

Dr. Bennoch conducted a second evaluation of Claimant on August 18, 2010. Dr. Bennoch diagnosed an "[a]cute traumatic injury of the low back resulting in an L5–S1 disc with L5 nerve impingement[.]" He concluded that if Claimant received no further therapy, she was at maximum medical improvement. He rated Claimant as having 40% permanent partial disability to the body as a whole as a direct result of the work injury. He did not provide new ratings concerning Claimant's psychological disability and other pre-existing impairments, but instead referred back to his earlier evaluation. He opined that the "combination of her impairments create[d] a substantially greater impairment than the total of each separate injury/illness[.]" Dr. Bennoch further opined that Claimant had been temporarily, totally disabled from the time of the work injury.

Dr. Franks, a licensed psychologist, examined Claimant on two occasions. In a report based on a June 5, 2009 examination of Claimant, Dr. Franks concluded that Claimant was "suffering from a complex psychiatric condition that derive[d] not only from her ... [work] injury, but also premorbid factors and personality issues." He diagnosed her as having a chronic depressive condition and borderline personality disorder. He rated Claimant as having 20% permanent partial

psychological impairment, with 10% attributable to the work injury and 10% attributable to her preexisting condition. He opined that Claimant would benefit from six months of psychological treatment.

After examining Claimant again on August 19, 2010, Dr. Franks diagnosed her as having "Pain Disorder Associated with Psychological and Mental Condition" attributable to the work injury. He rated Claimant's permanent partial psychological impairment at 25%, with 15% attributable to her work injury and 10% attributable to preexisting factors. He concluded:

[Claimant] is not totally and permanently disabled from a psychological standpoint. However, she is severely depressed and suffering from constant pain. The pain increases in connection with psychological discomfort and situational stressors. Given the chronic and generally inoperable nature of her physical injuries, she is likely to be burdened with chronic pain, including psychosomatic pain, for the foreseeable future.

Dr. Franks also testified at the final hearing before the ALJ, stating that although there were other factors involved in Claimant's psychiatric hospitalizations in 2008, the hospitalizations were nonetheless necessary to "cure and relieve" the effects of the work injury. He also testified that Claimant would have difficulty maintaining employment.

At the request of Employer, Dr. Halfaker issued a comprehensive psychological assessment of Claimant on January 25, 2011. Dr. Halfaker stated in his report:

[I]t continues to be my opinion that rather than her [work] injury affecting her psychological condition to any great extent, it is more probable than not that her psychological condition associated with her chronic problems associated with her depression, anxiety, and personality disorder are impacting her

physical condition and influencing her physical complaints, degree of expressed disability, and diminishing the outcome from otherwise appropriate medical procedures and treatments.

He continued:

In this case, it is thought to be obvious that there is significant preexisting psychological disability associated with her history of depression, anxiety, and personality disorder. Most if not all of that psychological disability appears to carry forward into the post [work] injury period and interferes with her ability to recover from that injury. As such, I would apportion very little to no permanent, partial psychological disability of the person as a whole as arising from the [work] injury in isolation. It continues to be my opinion that whatever degree of psychological disability is determined to be present it would be 95% to 99% pre-existent to the work-related injury at question in this case.

Dr. Halfaker also concluded that Claimant had "reached maximum psychological improvement given the chronic, long-term, refractory nature of her psychological condition(s)." He opined that the work injury could serve as a contributing factor to Claimant's psychological disability, but he again attributed it as being 5% or less related, and he concluded that any need for ongoing psychological treatment was related to Claimant's preexisting condition and not the work injury.

In comparing his opinion with that of Dr. Franks, Dr. Halfaker stated, "I think probably the area of disagreement with Dr. Franks' opinions probably relates to the influence of the . . . work injury on her psychological condition." Specifically, Dr. Halfaker reiterated that while Dr. Franks

believed the work injury worsened Claimant's depression, Dr. Halfaker believed Claimant's pre-existing psychological condition worsened her ability to recover from the work injury. While Dr. Halfaker stated that Claimant needed psychotherapy before the work injury occurred and he did not view the work injury as the "prevailing need" for therapy, he agreed that "the work injury is a contributing factor in [Claimant's] need for psychotherapy[.]" He also agreed that the hospitalizations Claimant underwent were "necessary," "reasonable," and "appropriate[.]"

James England, a rehabilitation counselor, examined Claimant on March 24, 2011. He testified that the "primary problem" Claimant would face in finding employment was the "degree of psychological difficulty that she seem[ed] to be experiencing[.]" Mr. England concluded that Claimant was permanently and totally disabled from the psychological impairment alone.

The issues presented for decision at the final hearing before the ALJ were the nature and extent of Claimant's permanent disability and whether: Employer was responsible for unpaid medical expenses; Claimant was entitled to future medical care; Claimant was entitled to an award of costs for the emergency hearing; and the Fund had any liability. The ALJ determined that Claimant was permanently and totally disabled "because of her deteriorating psychological condition that is unrelated to the work accident" and assigned other percentages of disability as detailed hereafter.[5]

The ALJ found Dr. Halfaker's opinion to be more credible than Dr. Franks' opinion, and she also accepted Mr. England's opin-

---

5. At the time of the final hearing, Claimant weighed approximately 280 pounds, representing a 145 pound gain since the work injury. She required a cane to walk and suffered multiple crying spells per day.

ion that Claimant was not capable of working due to her psychological condition alone. The ALJ concluded that Claimant sustained a 12.5% permanent partial disability to her low back as a result of the work injury, for which Employer was liable, but found "Claimant's psychological problems are unrelated to and preexist the work injury." The ALJ also determined that Employer was not liable for past or future medical treatment and denied costs associated with the emergency hearing.

The ALJ determined that Claimant had a preexisting 15% permanent partial disability to the body as a whole attributable to the psychological condition and a 20% disability to her right arm from the carpal tunnel syndrome. She employed a 15% loading factor and found that Claimant was entitled to an award of $13,505.50 from Employer and $5,874.89 from the Fund.

Claimant filed an application for Commission review, asserting that the ALJ's award, which denied her permanent total disability compensation, was not supported by substantial and competent evidence. The Commission issued its final award on August 29, 2012. The Commission modified the ALJ's award, concluding that Claimant was permanently and totally disabled "due to the combination of the disability from [the] . . . work injury with her preexisting disabilities."

The Commission disagreed with the ALJ as to the causation of Claimant's disability. It found that the ALJ's finding that the work injury did not cause Claimant any further psychological disability was not supported by substantial and competent evidence. In its review of the expert opinions, the Commission noted that all except Mr. England agreed that the work injury contributed to Claimant's psychological disability in some manner. Claimant's own testimony at the final hearing "undoubtedly illustrate[d] that the pri-

mary injury caused a significant amount of additional psychological disability." The Commission concluded that Claimant sustained 12.5% permanent partial disability referable to the lower back and 10% permanent partial disability referable to her increased psychological disability. Upon concluding that the combination of the disability from the work injury and the preexisting disabilities rendered Claimant permanently and totally disabled, it also found the Fund liable for the portion of those benefits not assessed against Employer.

The Commission awarded Claimant past medical expenses, finding that she had provided credible testimony that the expenses were related to the work injury. The Commission also awarded Claimant future medical expenses, finding she had shown that she would require ongoing psychological care to relieve her from the effects of the work injury. The Commission denied Claimant's request for costs associated with the emergency hearing.

These now-consolidated appeals timely followed.

### Analysis

*Claimant's Appeal (Case # 32291)*

■ In her sole point on appeal, Claimant asserts the Commission erred in denying her request for costs associated with the emergency hearing because Employer did not present reasonable grounds for denying Claimant temporary total disability benefits and medical treatment. We disagree.

■ Section 287.560 provides, in relevant part:

All costs under this section shall be approved by the division and paid out of the state treasury from the fund for the support of the Missouri division of workers' compensation; provided, however,

that if the division or the commission determines that any proceedings have been brought, prosecuted or defended without reasonable ground, it may assess the whole cost of the proceedings upon the party who so brought, prosecuted or defended them.

Under the statute, the Commission *may,* in its discretion, assess the costs of a proceeding against a party who unreasonably defended the proceeding. *Nolan v. Degussa Admixtures, Inc.,* 276 S.W.3d 332, 335 (Mo.App. S.D.2009). "The [C]ommission should exercise this power, however, with great caution and only when the case for costs is clear and the offense egregious." *Wilson v. C.C. Southern, Inc.,* 140 S.W.3d 115, 120 (Mo.App. W.D.2004). "[O]ur proper review is for abuse of discretion, which generally means a decision so clearly against the logic of the circumstances, and so unreasonable and arbitrary, that it shocks one's sense of justice and indicates a lack of careful deliberate consideration." *Nolan,* 276 S.W.3d at 335.

The Commission concluded as follows that Claimant did not meet her burden to prove that Employer unreasonably defended her claim: "In this case, [E]mployer refused [Claimant] benefits because it believed, based upon reasonable ground, that the treatment [Claimant] requested was not related to the work injury. Employer's refusal to provide benefits was not egregious[.]" Substantial evidence supported that finding. Dr. Jordan released Claimant to return to work in November 2007. Dr. Olive initially believed the work injury was unrelated to Claimant's low back pain. After he changed his opinion, Employer authorized Claimant to begin treatment again. Nothing in the record indicates that the Commission abused its discretion in finding that Employer did not act egregiously or outrageously in denying Claimant medical treatment. Claimant's point fails.

### *Employer's Appeal (Case # 32257)*

Employer presents three points for our review, and we will address them in order.

### *Point I*

Employer's first point argues that no substantial, competent evidence supports the Commission's finding that Claimant was permanently and totally disabled because the overwhelming weight of the evidence established that her inability to work was attributable to her preexisting psychological disability. Employer's reply brief clarifies that Employer does not dispute that Claimant is permanently and totally disabled; it disagrees only with the Commission's determination that the work injury was the prevailing factor in causing the disability.[6] "An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." Section 287.020.3(1), RSMo Cum.Supp. 2005. "The prevailing factor' is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id.* Claimant had the burden to establish that the September 28, 2007 accident she suffered at work was the primary factor that

---

6. "Total disability" is defined to "mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020.7, RSMo Cum.Supp.2005. "The test for permanent, total disability is the worker's ability to compete in the open labor market. The critical question is whether, in the ordinary course of business, any employer reasonably would be expected to hire the injured worker, given his present physical condition." *ABB Power T & D, Co. v. Kempker,* 236 S.W.3d 43, 48 (Mo.App. W.D.2007) (internal citations omitted).

caused her injury. *See Rader v. Werner Enters., Inc.*, 360 S.W.3d 285, 298 (Mo. App. E.D.2012).

 Employer argues that the medical evidence does not support the Commission's finding that the work injury "caused permanent additional psychological impairment that resulted in [Claimant's] total disability." [7] There is no question that Claimant had a preexisting psychological disability.[8] Substantial and competent evidence supported the Commission's finding that the work injury contributed to Claimant's psychological disability. The Commission credited Claimant's testimony that the work injury caused stress on her marriage and led to her significant weight gain, which prevented her from participating in everyday activities. In turn, her back pain and lack of physical activity contributed to her crying spells and depressed state.

 More importantly, the Commission correctly noted that "nearly every expert opined that the work injury caused at least some additional psychological dis-

ability." Dr. Bennoch attributed 5% of Claimant's 20% permanent-partial psychological disability to the work injury. Dr. Franks initially attributed 10%, then later 15%, of Claimant's psychological disability to the work injury. Dr. Halfaker, who placed much more emphasis on Claimant's pre-existing mental condition, still opined that the work injury could have attributed up to 5% of Claimant's psychological impairment.[9] "The Commission is not bound by the experts' exact percentages of disability and is free to find a disability rating higher or lower than that expressed in medical testimony." *Hawthorne v. Lester E. Cox Med. Ctrs.*, 165 S.W.3d 587, 594 (Mo.App. S.D.2005). The Commission is free to reject all or part of an expert's testimony, and we defer to its credibility determinations and to the weight it accords evidence. *Pace v. City of St. Joseph*, 367 S.W.3d 137, 150 (Mo.App. W.D.2012).

Employer argues that the Commission's award should be reversed "because it is agreed by the health care experts (and

7. The Commission adopted and affirmed the ALJ's finding that Claimant "sustained 12.5% permanent partial disability of the body as a whole referable to the lumbar spine" as a result of the work injury, which was not challenged by either party. We are mindful that the extent and percentage of disability is a question of fact for determination by the Commission. *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 234 (Mo.App. S.D.2003).

8. "[A]n employer is liable where a work injury aggravates a preexisting, non-disabling condition and the condition escalates the level of disability." *Rader*, 360 S.W.3d at 298.

9. The Fund argues this is a mischaracterization of Dr. Halfaker's opinions. In his report, he stated the following:

It continues to be my opinion that whatever degree of psychological disability is determined to be present it would be 95% to 99% pre-existent to the work-related injury at question in this case.

... I could see how the 9.28.2007 injury in this case could serve as a contributing factor to the need for psychotherapy, but would view it as being 5% or less related to the need with her chronic, ongoing, long-term history of a need for psychotherapy that existed well before the [work injury] of 9/28/2007 representing the prevailing or substantial contributing factor to any ongoing need for psychotherapy, especially in light of the identification of the presence of a personality disorder in this case.

This argument ignores Dr. Halfaker's deposition testimony, where he opined that although the work injury was not the prevailing factor in causing Claimant's disability, he said he saw it being "like, 97 percent not causing it, only 3 percent causing it." Again, we defer to the Commission's findings of fact. Even if we were to disregard Dr. Halfaker's testimony on the issue completely—as the Commission is entitled to do—there was substantial and competent evidence to support the award in light of the other experts' testimony.

vocational rehabilitation expert) that the back injury alone does not render [Claimant] unable to work, the award of permanent total disability benefits should be overturned." This is a *non sequitur.* Section 287.020.3(1) requires that the work-related injury be the "primary factor" in causing the disability at issue, not the sole factor. *Cf. Leake v. City of Fulton,* 316 S.W.3d 528, 532 (Mo.App. W.D.2010) (it is the comparative relationship between a pre-existing condition and a work-related activity which determines whether the work-related activity was the primary factor in the injury or death and this is an "inherently" factual issue for the Commission).

Deferring, as we must, to the Commission's resolution of all witness credibility determinations, the experts' evidence and Claimant's testimony supported the Commission's finding that the work injury contributed to Claimant's psychological impairment. That evidence, coupled with the Commission's findings of a 12.5% permanent partial disability to the lower back and 10% permanent partial disability to increased psychological disability, constituted substantial, competent evidence supporting the Commission's implicit determination that the work injury was the prevailing factor in causing Claimant's total and permanent disability. Point I is denied.

### Point II

■ Employer next argues that the Commission erred in awarding Claimant past medical expenses because the Commission's finding that her past medical treatment was made necessary by the work injury was not supported by substantial and competent evidence. Again, we disagree.

In addition to disability compensation, "the employee shall receive and the em-

ployer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury." Section 287.140.1, RSMo Cum.Supp.2005. To establish an entitlement to reimbursement of her past medical expenses, Claimant had to show that the expenses were reasonably required to treat the effects of work injury. *Bowers v. Hiland Dairy Co.,* 132 S.W.3d 260, 266 (Mo.App. S.D.2004). "Meeting that burden requires that the past bills be causally related to the work injury." *Id.*

■ "Where a claimant produces documentation detailing his past medical expenses and testifies to the relationship of such expenses to the compensable workplace injury, such evidence provides a sufficient factual basis for the Commission to award compensation." *Treasurer of Missouri v. Hudgins,* 308 S.W.3d 789, 791 (Mo.App. W.D.2010). In *Tillotson v. St. Joseph Med. Ctr.,* 347 S.W.3d 511, 517 (Mo.App. W.D.2011), the Western District held that section 287.140.1 "does not require a finding that a work place accident was the prevailing factor in causing the need for particular medical treatment." Here, Claimant provided medical records and bills documenting her epidural treatments and psychiatric hospitalizations, which totaled $33,653.10. Claimant also testified that the charges were for treatment received as a result of her work injury. Dr. Franks supported Claimant's testimony, opining that Claimant's psychiatric hospitalizations were necessary to treat the effects of her work injury.

■ Despite Dr. Halfaker's view that the work injury was not the prevailing factor in the need for psychotherapy, the Workers' Compensation law does not "incorporate a 'prevailing factor' test into the

determination of medical care and treatment required to be afforded for a compensable injury by section 287.140.1." *Id.* at 519. This section "require[s] nothing more than a demonstration that certain medical care and treatment is reasonably required to cure and relieve the effects of an injury." *Id.* at 520. Dr. Halfaker did agree that Claimant's hospitalizations had been "necessary" and "reasonable," and that the work injury was a contributing factor in Claimant's need for psychotherapy. As a result, the Commission did not err in ordering Employer to reimburse Claimant for her past medical expenses. Point II is denied.

### Point III

In a similar vein, Employer's third point claims the Commission's award of future medical costs was not supported by substantial and competent evidence that the future psychological medical treatment was made necessary by the work injury. Like past medical expenses, future medical expenses are covered under section 287.140.1. *Conrad v. Jack Cooper Transp. Co.,* 273 S.W.3d 49, 51 (Mo.App. W.D. 2008).

"To receive an award of future medical benefits, a claimant must show a reasonable probability that he or she requires further medical treatment because of an injury suffered at work." *Rader,* 360 S.W.3d at 300. "An employer will be responsible for future medical benefits only if the evidence establishes to a reasonable degree of medical certainty that 'the need for future medical care flows from the accident.'" *Id.* (quoting *Lawson v. Ford Motor Co.,* 217 S.W.3d 345, 351 (Mo.App. E.D.2007)). "And, a claimant can receive an award of future medical benefits if a work injury aggravates a pre-existing condition to the point that the claimant is likely to need future care." *Conrad,* 273

S.W.3d at 54 (reversing the denial of future medical expenses even though the preexisting condition was the "primary reason" for the future care).

Here, the following constituted substantial, competent evidence supporting the Commission's award. Dr. Franks indicated in his report that Claimant needed psychological treatment, counseling, and "ongoing medication evaluation[.]" Dr. Bennoch testified that Claimant would "absolutely" require ongoing care to treat her pain symptoms from the work injury, and he recommended that she receive treatment from a pain management specialist. Dr. Halfaker also recommended additional psychotherapy for Claimant. Given this evidence, and again deferring to the Commission on its credibility determinations, the Commission did not err in also awarding Claimant her future medical costs. Point III is denied.

### The Fund's Appeal (Case # 32277)

The Fund's single point claims "the substantial and competent evidence is that [Claimant]'s current psychological condition is the cause of her inability to be employed in that her current psychological condition has significantly worsened since her work injury, and [is] unrelated to her work injury and this worsening cannot be taken into account in determining the liability of [the Fund]." We disagree.

Pursuant to section 287.220, the Second Injury Fund is liable in certain cases of permanent disability where there is a preexisting disability. The Second Injury Fund is responsible for that portion of disability attributable to the preexisting condition. If a claimant establishes that the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability or that the two disabilities combined result in a

greater disability than that which would have occurred from the last injury alone, the Second Injury Fund is liable. *Richardson v. Missouri State Treasurer,* 254 S.W.3d 242, 244 (Mo.App. E.D.2008) (internal citations omitted). "Where the statute applies, the employer is liable only for the amount of disability caused by the current injury, and the fund is liable in the amount of the increase in disability caused by the synergistic effect of the two injuries." *Pierson v. Treasurer of Missouri,* 126 S.W.3d 386, 389 (Mo. banc 2004).[10]

The Commission was not required to consider only Claimant's psychological condition as it existed at the time of the work injury in determining the Fund's liability so long as Claimant's worsening psychological condition was attributable to the work injury. The italicized portions of the following excerpts from cases cited by the Fund belie their support for the Fund's flawed argument that "[t]here is no evidence that [Claimant]'s preexisting disabilities, *as they were at the time of the [work injury]*, cause her current inability to work in the open labor market." (Emphasis ours.)

In *Lawrence v. Joplin R–VIII Sch. Dist.,* we wrote, "The Second Injury Fund provides compensation for previously existing disabilities, not increased disabilities caused by post-accident worsening of pre-existing diseases *when that worsening was not caused by or aggravated by the last injury.*" 834 S.W.2d 789, 793 (Mo.App. S.D.1992) (emphasis added). Similarly, "the Second Injury Fund is not liable for any progression of claimant's preexisting disabilities *not caused by claimant's last injury.*" *Garcia v. St. Louis Cnty.,* 916 S.W.2d 263, 266 (Mo.App. E.D.1995) (emphasis added) (*overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003)). And again, "The Second Injury Fund is not responsible for progression of preexisting conditions or new conditions that develop *after and unrelated to the work injury.*" *Lammert v. Vess Beverages, Inc.,* 968 S.W.2d 720, 725 (Mo.App. E.D.1998) (emphasis added) (*overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003)).

Here, as set out in our analysis of Employer's first point, there was substantial, competent evidence that the work injury aggravated and worsened Claimant's preexisting psychological condition. Claimant testified that the work injury caused stress and a significant weight gain, contributed to the deterioration of her marriage, and caused her recurrent depression and crying spells. Mr. England and Drs. Bennoch, Franks, and Halfaker all agreed (to varying degrees) that the work injury contributed to Claimant's worsening, depressed state. The Commission's determination that the work injury caused 10% permanent partial disability referable to Claimant's increased psychological problems was supported by their expert testimony. Claimant's increased psychological

---

10. We are mindful that the Commission was responsible for first determining the degree of disability attributable to the last injury alone before considering the effects of Claimant's preexisting disabilities. *Ball–Sawyers v. Blue Springs Sch. Dist.,* 286 S.W.3d 247, 254 (Mo. App. W.D.2009). Here, the Commission determined that "as a result of the primary injury [Claimant] sustained 12.5% permanent partial disability of the body as a whole referable to the lumbar spine, and 10% permanent partial disability of the body as a whole referable to increased psychological problems." The Commission then determined that those disabilities—attributable to the work injury—combined with her preexisting physical and psychological disabilities to render Claimant permanently and totally disabled. The Fund does not appear to challenge that this computation would not otherwise render it liable for Claimant's permanent total disability.

disability attributable to the work injury was appropriately considered in determining the Fund's liability.

The Fund's point is also denied, and the award of the Commission is affirmed.

DANIEL E. SCOTT, and MARY W. SHEFFIELD, JJ., concur.