

# Missouri Court of Appeals

## Southern District

### Division One

JUANITA KURBURSKY,                           )
                                             )
          Appellant/Respondent,              )
                                             )
vs.                                          )          Nos. SD37103 and SD37104
                                             )               CONSOLIDATED
INDEPENDENT IN-HOME SERVICES,  )
LLC.,                                        )
          Respondent/Cross-Appellant,        )          **Filed: July 11, 2022**
                                             )
TREASURER OF THE                             )
STATE OF MISSOURI-CUSTODIAN    )
2ND INJURY FUND,                            )
                                             )
          Respondent.                        )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

## AFFIRMED IN PART, REVERSED AND REMANDED IN PART

Juanita Kurbursky ("Claimant") appeals the Labor and Industrial Relations Commission's ("the Commission") final award denying permanent total disability benefits, past medical care liability, and future medical care liability and awarding permanent partial disability benefits on her workers' compensation claim. Claimant raises six points on appeal. Points 1 through 3 challenge the Commission's denial of permanent total disability benefits. Point 4 argues the Commission misapplied the law

in calculating Claimant's average weekly wage for permanent partial disability benefits by not basing it on the average number of hours per week required by the employer to classify an employee as a full-time or regular employee as required by section 287.250.3.[1]  Point 5 argues the Commission erred by denying liability for past medical care.  Point 6 argues the Commission erred by denying liability for future medical care.  Because the Commission failed to make essential findings of fact on the issue raised in point 4, we reverse and remand for the Commission to make factual findings on the "average weekly wage of a full-time or regular employee engaged by the employer to perform work of the same or similar nature" and the number of hours used by Employer to classify an employee as a "full-time or regular employee" and then recalculate Claimant's award for permanent partial disability benefits based on those findings. § 287.250.3.  In all other respects, we affirm the decision of the Commission.

## Background

Claimant was employed by Independent In-Home Services, LLC ("Employer") as a home healthcare worker beginning in January 2011.[2]  On August 15, 2012, Claimant was visiting the home of one of her patients when she hit her head on a canoe that was on top of a car in the patient's driveway, causing her to fall on her back.  Claimant experienced pain in her head and back, lightheadedness, and a headache.

---

[1] All rule references are to Missouri Court Rules (2021).  All statutory references are to RSMo. (2010) unless otherwise stated.

[2] Claimant was able to perform all her work duties prior to her work injury, though on occasion she worked at a slower pace and was careful to avoid aggravating her preexisting injuries.  Claimant had several preexisting injuries to her right knee, left knee, and left ankle, which slowed her movement and required her to be careful.  Claimant developed plantar fasciitis with heel spurs and bone contusions in her right foot in early 2012, which slowed down her movement and caused pain in her foot.  Claimant was diagnosed with carpal tunnel syndrome in her right wrist in 2011.  Claimant also had a degenerative disc disease prior to her work injury.  Claimant was also severely overweight, which placed additional strain on her neck, arms, legs, and back.

2

Following her fall, Claimant received both emergency and follow-up treatment. Dr. James L. Jordan ("Dr. Jordan") diagnosed Claimant with a cervical strain, thoracic strain, lumbar strain, bilateral arm and forearm strains, and a left hip contusion and strain. He later reevaluated Claimant and determined she had reached maximum medical improvement ("MMI") for the symptoms of her work injury. Dr. Jordan determined that Claimant's injuries to her shoulder and lower back, both of which occurred weeks after her fall, were unrelated to her work injury.

Claimant received additional treatments with Dr. Glenn Kunkel ("Dr. Kunkel"), a pain management specialist. Dr. Kunkel ordered MRIs of Claimant's spine and administered steroid injections and radiofrequency thermocoagulation. Claimant discontinued treatment with Dr. Kunkel and began treatment with her primary care physician.[3] She testified she still experienced pain in her neck and back, resulting in headaches, memory loss, and difficulty sitting or standing for extended periods of time. She also complained of difficulty sleeping but provided no medical records supporting that claim.

Claimant filed a workers' compensation claim for permanent partial disability benefits for the injuries to her head, neck, back, arms, legs, hips, tailbone, and shoulders, and identified previous injuries to her right foot, left foot, left knee, right hand, and right knee. During the hearing on her claim, the Administrative Law Judge ("ALJ") reviewed Claimant's medical records, the depositions of two doctors and three expert vocational witnesses regarding the degree of Claimant's disability, the need for past medical care, and the need for future medical care.

---

[3] Claimant has continued to see her primary care physician for multiple unrelated subsequent injuries.

Dr. Robert Poetz ("Dr. Poetz"), an expert witness for Claimant, opined that Claimant was permanently and totally disabled "as a result of the combination of the August 15, 2012 work-related injuries and her pre-existing conditions . . . and will remain unemployable in the open labor market." According to Dr. Poetz, "[t]here is a twenty percent permanent/partial disability to the body as a whole measured at the head directly resultant from the August 15, 2012 work related injury. The combination of the present and prior disabilities results in a total which exceeds the simple sum by twenty percent." Dr. Poetz also believed Claimant was already at MMI and would need medical treatment and diagnostic testing in the future. Dr. Ted Lennard ("Dr. Lennard") opined Claimant was only permanently partially disabled from the work injury and was unlikely to benefit from additional treatment after her discharge by Dr. Jordan. The vocational experts, James England ("England"), Wilbur Swearingin ("Swearingin"), and Gary Weimholt ("Weimholt"), agreed that under Dr. Poetz restrictions, Claimant would be permanently and totally disabled, while under Dr. Lennard's restrictions Claimant would be capable of both obtaining and maintaining employment.

The ALJ awarded Claimant permanent partial disability benefits and additional temporary total disability benefits, but determined Claimant had not met her burden of proof to obtain benefits for past or future medical care, Second Injury Fund liability, or permanent total disability.[4]

---

[4] The ALJ found Claimant was not entitled to payment for certain past medical bills because she did not meet her burden of proving that the need for such treatment was related to her work injury. The ALJ also found Claimant did not meet her burden of proving that she is entitled to future medical care. The ALJ found Dr. Jordan, the authorized treating physician, was in a better position to evaluate the nature and extent of Claimant's injuries and that he was more credible in recommending no additional treatment to cure and relieve her work injury.

The ALJ found Dr. Poetz's testimony that Claimant was unemployable in the open labor market not credible; that Dr. Poetz's disability ratings were substantially inflated; and that England's opinion was less than credible and was not persuasive on the issue of permanent and total disability. The ALJ also found Dr. Poetz lacked credibility because he vacillated between the causes of Claimant's permanent total disability, the existence, cause, and nature of Claimant's sleep problems, and the inability to explain which restrictions were imposed due to Claimant's preexisting injuries versus her work injury. The ALJ also determined that Dr. Poetz's restrictions were excessive and beyond those reasonably anticipated for Claimant on a permanent basis. The ALJ found the opinions of Weimholt and Swearingin were more persuasive than those of England and that Claimant was capable of competing for employment. He found England unpersuasive because England's opinion was based on and included substantial speculation regarding the effect of sleep deprivation and the impact daytime drowsiness would have on Claimant's employment prospects.

The Commission adopted and affirmed the ALJ's findings of fact and conclusions of law "to the extent that they [were] not inconsistent with" the final award. Specifically, the Commission "adopt[ed] and affirm[ed] the [ALJ's] conclusions on the issues of whether [Claimant's] August 15, 2012 primary injury was a compensable injury, past and future medical care, the nature and extent of [Claimant's] disability, and [Claimant's] maximum medical improvement date." The Commission modified Claimant's weekly compensation rate, temporary total disability benefits and Second Injury Fund liability. The Commission found Dr. Poetz's permanent partial disability ratings, and his opinions on the relationship between Claimant's primary and preexisting injuries were persuasive, but that Dr. Poetz's opinion on permanent total

5

disability was not persuasive. The Commission applied a 20% multiplicity factor to the ALJ's permanent partial disability finding so that Claimant was entitled to an enhanced permanent partial disability benefit from the Second Injury Fund.[5] The Commission also determined Claimant's permanent partial and temporary total disability benefits should be calculated based on a 30-hour full-time work week. Ultimately, the Commission concluded Employer was liable to Claimant for additional temporary total disability benefits and the Second Injury Fund was liable to Claimant for enhanced permanent partial disability benefits. The remainder of the ALJ's findings and award were undisturbed.

Claimant and Employer timely filed notices of appeal, but Employer does not raise any points of error in its brief.[6] Claimant raises six points on appeal. For ease of analysis, we address some of Claimant's points together and out of order.

## Standard of Review

We review all final decisions, findings, rules, and orders of the Commission to determine whether the Commission's award was supported by competent and substantial evidence upon the whole record. *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 198 (Mo. banc 2020). We review the findings of the Commission rather than those of the ALJ, but where the Commission affirms and

---

[5] "A multiplicity factor is a special or additional allowance for cumulative disabilities resulting from a multiplicity of injuries." *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 776 (Mo. App. E.D. 2015).
[6] Employer is listed as a cross-appellant in this case. However, its brief primarily responds to Claimant's points of error rather than raising new claims. Employer does reference an allegation of error within its discussion of Claimant's point 4, but any such reference in its brief falls far short of the briefing requirements contained in Rule 84.04. Because Employer has not briefed the issues complained of in its notice of appeal, its cross-appeal is deemed abandoned. Rule 84.05, *Ford v. Wal-Mart Assocs., Inc.*, 155 S.W.3d 824, 826 (Mo. App. E.D. 2005). As a result, any allegations of error contained in Employer's brief are not preserved for our review. *Hale v. Burlington N. & Santa Fe Ry. Co.*, 638 S.W.3d 49, 61 (Mo. App. S.D. 2021).

6

adopts the ALJ's findings and conclusions, we will review them as the Commission's own. *Id.* at 198 n.2.

Section 287.495 provides that we may only reverse the Commission where it acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to support the making of the award. *Annayeva*, 597 S.W.3d at 198. We defer to the Commission's credibility determinations and the weight given to conflicting evidence, but review the Commission's conclusions of law *de novo*. *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015). "This Court is not bound by the commission's interpretation and application of the law, and no deference is afforded to those determinations." *Id.* (internal quotations and citation omitted). "Reversal on the basis that the Commission's award is unsupported by sufficient competent evidence or the evidence weighs overwhelmingly against the Commission's award is warranted only in rare cases." *Schlereth v. Aramark Unif. Servs., Inc.*, 589 S.W.3d 645, 651 (Mo. App. E.D. 2019) (internal quotations and citation omitted).

### Discussion

*Claimant's Evidentiary Challenges*

Points 1, 2, 5, and 6 are not-supported-by-competent-and-substantial-evidence challenges. Point 3 raises an against-the-weight-of-the-evidence challenge. These points challenge the Commission's denial of permanent total disability benefits, past medical care liability, and future medical care liability. While these are different challenges, they fail for the same reasons.

These points allege:

I. The [Commission] erred in finding that [Claimant] is not permanently and totally disabled *because this finding is not supported by sufficient competent and substantial evidence,* in that the Commission's finding that Dr. Poetz's opinion regarding the extent of [Claimant's] disability is not persuasive is inconsistent with the Commission's finding that Dr. Poetz's opinion is persuasive on permanency and combination as Dr. Poetz was the only doctor to consider and evaluate [Claimant's] prior disabilities and offer an opinion on combination.

II. The [Commission] erred in finding that [Claimant] is not permanently and totally disabled *because this finding is not supported by sufficient competent and substantial evidence* and is contrary to Missouri law *(Hampton v Big Boy Steel Erection,* 121 SW 3d 220, 223-224 (Mo. 2003)), in that the Commission failed to consider uncontested evidence of [Claimant's] sleep deprivation after the primary injury and all the vocational experts agreed that an employee who had to nap during work hours due to sleep deprivation would not be hired on the open labor market.

III. The [Commission] erred in finding that neither Employer nor the Second Injury Fund is liable for permanent total disability benefits *because this finding is against the weight of the evidence* and is contrary to Missouri law in that all of [Claimant's] limitations, including sleep deprivation, rendered her permanently and totally disabled either as a result of the last injury alone or as a result of a combination of her disability and these opinions are not inconsistent.

V. The [Commission] erred in finding that Employer is not liable for past medical expenses *because this finding is not supported by sufficient competent and substantial evidence,* in that [Claimant] submitted evidence of medical records and bills for treatment she sought after Employer refused to provide additional treatment for her ongoing symptoms related to her August 15, 2012 work injury and [Claimant] and Dr. Poetz both provided unrebutted testimony that the bills were reasonable and were related to treatment flowing from her work injury.

VI. The [Commission] erred in finding that [Claimant] is not entitled to future medical care *because this finding is not supported by sufficient competent and substantial evidence,* in that Dr. Poetz was the only physician that reviewed all of [Claimant's] medical records, including Dr. Kunkel's objective diagnostic testing and treatment records and provided an opinion with regard to the necessity for future testing and treatment.

(Emphasis added).  Each point challenges the Commission's determination that Claimant did not meet her burden of proof and is predicated on arguments that require this Court to ignore our standard of review by reweighing the evidence.[7]

Challenges to an award where the claimant failed to meet his or her burden of proof are rarely successful on appeal.  ***Chambers v. Treasurer of Mo.***, 637 S.W.3d 681, 687 (Mo. App. S.D. 2021); ***Guinn v. Treasurer of State***, 600 S.W.3d 874, 882 (Mo. App. S.D. 2020); ***Shipley v. Office of Admin.***, 624 S.W.3d 369, 372 (Mo. App. S.D. 2020); ***Beaman v. Lowe's Home Ctrs., Inc.***, 601 S.W.3d 330, 331 (Mo. App. S.D. 2020); ***Annayeva***, 597 S.W.3d at 200; ***Johme v. St. John's Mercy Healthcare***, 366 S.W.3d 504, 512 (Mo. banc 2012).  This case is no exception.  While a workers' compensation award must be supported by competent and substantial evidence, the Commission's decision to *deny* benefits is not an award which requires competent and substantial evidence.  ***Guinn***, 600 S.W.3d at 880; *see also **Annayeva***, 597 S.W.3d at 200 n.8.  As explained in ***Chambers***, challenges asserting that the denial of a claimant's claim are erroneous because they are not supported by competent and substantial evidence on the whole record, make no logical sense, and for this reason alone, should be denied without any further discussion.  *See **Guinn,*** 600 S.W.3d at 880; *see also **Anttila v. Treasurer of State***, 632 S.W.3d 502, 510 (Mo. App. S.D. 2021) ("A decision against a claimant, as the party with the burden of proof, does not

---

[7] A not-supported-by-competent-and-substantial-evidence argument following the denial of benefits overlooks the simple fact that the claimant in a worker's compensation case bears the burden of proof, which includes the separate burdens of persuasion and production. ***Annayeva***, 597 S.W.3d at 200 n.8. Accordingly, a claimant meets his or her burden of production by introducing enough evidence on an issue to have the issue determined by a fact finder so that the whole record contains sufficient facts necessary to award the claimant benefits. ***Id.*** The burden of persuasion requires that a claimant convince the fact finder to find that the facts presented are favorable to a claimant. As a result, a party may present extensive evidence but the Commission may find the evidence presented is unpersuasive. ***Schlereth***, 589 S.W.3d at 654.

9

require any evidence to support it.").  The denial of benefits here indicates Claimant did not meet her burden of proof.  ***Shipley***, 624 S.W.3d at 372; ***Beaman***, 601 S.W.3d at 331 (citing ***Annayeva***, 597 S.W.3d at 200 n.8).

Claimant's arguments are essentially that:  (1) the Commission should have found Claimant's witnesses more credible than Employer's or Treasurer's; (2) the Commission should have found Claimant's experts more persuasive than Employer's or Treasurer's; and (3) the Commission should not have believed Employer's or Treasurer's experts. These are challenges to the weight the Commission gave that evidence or to its credibility determinations.  Such arguments ignore our standard of review by requiring this Court to substitute its views of witness credibility and weight of the evidence for the Commission's own, which we cannot do.  ***Nichols v. Belleview R-III Sch. Dist.***, 528 S.W.3d 918, 929 (Mo. App. S.D. 2017).  The Commission is free to reject all or part of a witness's testimony, and we defer to its credibility determinations and to the weight it accords evidence.  ***Sickmiller v. Timberland Forest Prods., Inc.***, 407 S.W.3d 109, 120 (Mo. App. S.D. 2013).  For this reason alone, Claimant's arguments are meritless.

Here, even assuming without deciding that Claimant produced competent and substantial evidence on her claims, Claimant still bore the burden of convincing the Commission to view the evidence in her favor.  She failed to meet this burden.  The Commission's denial of permanent and total disability benefits, past medical care, and future medical care is affirmed.  Points 1, 2, 3, 5 and 6 are denied.

*Claimant's Erroneous Interpretation of Law Challenge*

Claimant's fourth point argues the Commission incorrectly interpreted section 287.250.3 by adding words to the statute and as a result the Commission did not calculate Claimant's average weekly wage based on the number of hours per week

10

utilized by Employer to classify an employee as a full-time or regular employee. Because the Commission failed to make factual findings on "the average weekly wage of a full-time or regular employee engaged by [E]mployer to perform work of the same or similar nature" and the number of hours required by Employer to classify an employee as a "full-time or regular employee," we reverse and remand the cause for the Commission to make findings of fact on these statutory factors. § 287.250.3.

Section 287.250.3 provides:

If an employee is hired by the employer for less than the number of hours per week needed to be classified as a full-time or regular employee, benefits computed for purposes of this chapter for permanent partial disability, permanent total disability and death benefits *shall be based upon the average weekly wage of a full-time or regular employee engaged by the employer to perform work of the same or similar nature and at the number of hours per week required by the employer to classify the employee as a full-time or regular employee,* but such computation shall not be based on less than thirty hours per week.[8]

(Emphasis added). Thus, under this subsection, the Commission must find: (1) the average weekly wage of a full-time or regular employee engaged by Employer to perform work of the same or similar nature; and (2) the number of hours per week Employer requires to classify an employee as a full-time or regular employee.

The Commission found:

[Claimant] worked at [E]mployer for 20 to 25 hours per week, and she was deemed to be a part-time employee. . . . [Claimant] earned 7.65 per hour at [E]mployer, and worked 20 to 25 hours per week. [Claimant] testified that there were about three other employees performing this same job in a

---

[8] Claimant's point and argument cite to this subsection to assert that her average weekly wage was incorrectly calculated for permanent partial disability and temporary total disability benefits. However, this specific subsection only relates to Claimant's permanent partial disability benefits. We therefore limit our discussion to the issue preserved by Claimant, *i.e.* the calculation of permanent partial disability benefits based on the average weekly wage calculation contained in section 287.250.3. *Hale*, 638 S.W.3d at 61; ("the argument *shall be* limited to those errors included in the 'Points Relied On.'") (quoting Rule 84.04(e)).

11

fulltime capacity. [Claimant] specifically named Pamela Chapman as one of the employees that worked 40 hours-plus per week.[9]

The actual findings of fact are limited to the first two sentences in which the Commission found that Claimant worked for Employer part-time and she made $7.65 per hour while working 20-25 hours per week. The remainder of the Commission's "factual" findings are merely a recitation of the evidence presented rather than findings of the facts necessary to resolve this issue. *Stegman v. Grand River Reg'l Amb. Dist.*, 274 S.W.3d 529, 533 (Mo. App. W.D. 2008) (explaining that a workers' compensation award must be accompanied by a finding of fact that identifies the affirmative factual basis supporting the award). Where the Commission does not make a factual finding on an essential element of an award, we must reverse and remand so that the Commission may make a factual determination on that issue. *Lawrence v. Anheuser Busch Cos., Inc.*, 310 S.W.3d 248, 252 (Mo. App. E.D. 2010). The factual findings are necessary so that we can "know what a decision means before the duty becomes ours to say whether it is right or wrong." *Stegman*, 274 S.W.3d at 534. We reverse and remand for the Commission to make factual findings on "the average weekly wage of a full-time or regular employee engaged by [E]mployer to perform work of the same or similar nature" and the number of hours required by Employer to classify an

---

9 The ALJ found:

> Claimant testified that she earned $7.65 per hour. The wage statement provided by Employer in Exhibit C is consistent with this testimony. Claimant also testified that there were at least three other employees, including her friend, Pam Chapman, who performed the same job duties and were paid the same hourly rate, but who worked full-time because some clients needed 24 hour care. Employer/Insurer did not provide any evidence to dispute this testimony.

employee as a "full-time or regular employee" and to then calculate its award based upon those findings. § 287.250.3.

## Conclusion

We affirm the Commission's final award in all respects except its calculation of permanent partial disability benefits. We reverse and remand for the Commission to make factual findings on "the average weekly wage of a full-time or regular employee engaged by [E]mployer to perform work of the same or similar nature" and the number of hours required by Employer to classify an employee as a "full-time or regular employee" and calculate its award based upon those findings. § 287.250.3.


MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS